## Curley *versus* The Commonwealth.

| 84 | 151 |
|----|-----|
| 181 | 26 |
| 84 | 151 |
| 190 | 20 |

| 84 | 151 |
|----|-----|
| 207 | ¹277 |

| 84 | 151 |
|----|-----|
| f216 | ³151 |

1. There was no office provided for the jury commissioners, nor a place of safety for the custody of the jury wheel. The commissioners arranged for its custody by having it kept in the vault of the county treasurer, upon condition that no one but a jury commissioner should enter the vault for the wheel; the sheriff kept the key of the wheel. *Held*, that the custody of the wheel was sufficient.

2. It is not proper for the jury commissioners and sheriff to use one and the same seal, but each should have his own seal, so that he alone shall have its custody.

3. A juror is competent who has formed an opinion from what he has read, but does not think the opinion is so fixed and determined that he would not be governed by the evidence, and who feels sure it would not prejudice the prisoner or give undue weight to the evidence against him.

4. A juror testified on his *voir dire* that he had formed and expressed an opinion, and that it was fixed and determined from what he had read, but not such an opinion as would influence or control him in any degree as a juror; that it would not influence him to give an undue weight to evidence against the prisoner, and that he felt certain that he could divest his mind of all prejudice and be controlled by the evidence. *Held*, that he was competent, as it did not appear that his opinion was formed upon the evidence to be given, or that he had any fixed belief of the guilt of the prisoner.

March 19th and 20th, 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Oyer and Terminer of *Montgomery county* : Of January Term 1877, No. 290.

Indictment of Thomas F. Curley, for the murder of Mary Ann Whitby.

On the trial before Ross, P. J., it appeared that Curley was employed as a hand on the farm of Mr. James Weikle. On the 18th of May 1875, the latter went to Norristown to attend court as a juror, taking with him his family, and leaving Curley alone on the farm with Miss Whitby, who was an elderly maiden lady. On the morning of the same day there had been a slight altercation between Mr. Weikle and Curley in regard to some of his stock, and in the conversation it came out that Mr. Weikle had elicited the information he had in regard to the charge he made against Curley from Miss Whitby, at which Curley showed some little anger. This appeared to be the only motive for the crime. Before his departure for Norristown, Mr. Weikle gave the prisoner directions to go to Mr. Hoyer's, a neighbor, to plant corn, and to return at noon to feed and water the stock. Curley obeyed these instructions by going to Mr. Hoyer's and there planting corn with others so engaged until a quarter to twelve o'clock, when he returned to Weikle's house. He remained there until about a quarter past one, when he returned to the cornfield, having changed his " monkey cap" for a straw hat, and it was observed his hair was wet. About an hour after his return he began to talk about a " tramp," saying, " We had some trouble over there at dinner; there was a fellow

[Curley *v.* Commonwealth.]

over there wanted something to eat; Mollie gave him something; then he wanted money; Mollie said she had none; then the tramp said to go get some, and she said she could not, and the tramp stamped, grumbled and went off up the lane." It was remarked by those in the cornfield that during the afternoon Curley seemed uneasy, and at various times looked around and towards Weikle's house. At about five o'clock in the afternoon, before the corn-planting was finished, after asking Mr. Hoyer if he wanted him the next day, Curley started again towards Weikle's house, and in about twenty minutes came running back, saying that "some one had been over there and beat that woman shameful." Hoyer asked if she was dead, and the prisoner replied, "I don't know; I think she moves a little." Hoyer then told Curley to go and inform some of the neighbors, and have them go for a doctor, and Curley started in the direction indicated. When Hoyer reached the house he met Curley coming back. Hoyer entered and found the body of the murdered woman. Curley stood at the door, but did not go in. The prisoner gave several descriptions of the tramp, and the country was scoured in search of him, no suspicion, as yet, fastening upon Curley. No person answering any of the descriptions was found. When the physician arrived and a medical examination was made, it was discovered that the body of the murdered woman was still warm, and she had the appearance of having recently expired. She had ten wounds on her head, which appeared to have been inflicted by some blunt instrument, like an axe or hammer. Inquiry was then made of Curley where the axe was, and he said he did not know—perhaps in the shop. Several parties went in search of it, and about dark found it in the carpenter shop. No marks were seen on the axe at this time. The prisoner was with the parties who found the axe; it was left near the door of the shop. The next day it could not be found where left, but was discovered hidden under a pile of shavings, and upon examination marks of blood appeared thereon. Suspicion having meantime attached to the prisoner, upon further investigation blood spots were found upon the left sleeve of his shirt and upon his straw hat. There was also blood found under the nails of his fingers and upon his boots, as if it had been spurted upward upon them. When his attention was drawn to these blood stains, the prisoner said his nose had been bleeding, and the stains had come from wiping his nose and clean-ing his fingers on his boots. There was nothing missing about the house and everything therein was undisturbed. When the stock were driven to water, it was evident from their excessive thirst that they had not been cared for by the prisoner.

At the trial the prisoner moved the court to set aside the array of petit jurors for the following reasons:—

1. The jury wheel is not now, and has not been for one year or more past, in the custody of the jury commissioners of said county.

[Curley *v.* Commonwealth.]

2. The said jury wheel is now and has been for one year or more past, in the safe or vault of the county treasurer of said county, which safe or vault is in the exclusive possession of said treasurer and his deputy.

On behalf of the Commonwealth the sheriff testified:—

" The jury wheel is kept and has been kept during the past year, since it was filled, in the vault in the office of the treasurer of the county. It is locked. It is sealed; there is a sheet of paper put over the door of the wheel and then sealed with red sealing wax, with an impression. I keep the key. It has not been out of my possession since the wheel was filled. While in the vault it is within the control and subject to the order of the jury commissioners. They direct it to be placed there ; and the vault is in the court house. On the paper which is sealed are written the names of the jury commissioners, and my own name. (Seal shown sheriff.) This is the seal that is used."

A jury commissioner testified :—

" I am one of the jury commissioners of this county. I have been so for two years. After the wheel was filled in January last, it was placed by direction of the board in the vault of the treasurer's office in the court house. While there it is under the control and subject to the order of the jury commissioners ; we have empowered no one else to exercise any authority or control over it. I was present at each drawing during the present year. The wheel each time it was produced was identically in the condition in which we put it away. We use a seal in sealing it. I have used this seal ever since I was in office. I adopted that as my seal as jury commissioner. Mr. Smith, the other commissioner, also uses it. The wheel has been kept in the vault for nine years ; I know of no other convenient and safe place to keep it. Have no such place on my own premises, nor has Mr. Smith, I think. We have no key to the vault. The treasurer keeps the key of the vault. I have no seal imprinted as a jury commissioner's seal ; no bond is exacted of the treasurer. A jury commissioner presses the seal on. My signature is on the paper."

The following statement of his honor, Judge Ross, was admitted as a fact.

" That an arrangement has been made with the present treasurer by which he gives the jury commissioners the right to deposit the wheel for safe keeping in the vault, upon condition that no one but a jury commissioner had a right to enter the vault for the wheel, and that he shall have no responsibility, or liability, in reference to it."

The court, being satisfied that the law had been complied with in the matter of the custody of the wheel, overruled the motion.

A. K. Lorah, a juror, having been sworn on his *voir dire*, said :—

" Have formed an opinion against the prisoner. It is not a fixed and determined opinion ; but I still entertain it. It would require

evidence to remove it. I formed my opinion from the report I read."

Challenged for cause.

Cross-examined. "I don't think the opinion is so fixed and determined that I would not be governed by the evidence; I would be governed by it; my opinion now formed would not prevent me from giving the evidence for the prisoner its due weight, nor would it cause me to give the evidence against him an undue weight. I don't think my opinion would prejudice the prisoner at all, if I were sworn as a juror. I feel sure it would not."

Challenge for cause overruled.

Joseph M. Yahn, another juror, sworn on his *voir dire*, said: "I have formed and expressed an opinion. It is fixed. It is not such an opinion as would influence or control me in any degree as a juror. It would not influence me to give an undue weight to evidence against the prisoner. I feel certain that as a juror I could divest my mind of all prejudice and be controlled only by the evidence."

Challenge for cause overruled.

The court, Ross, J., *inter alia*, charged, "That this woman was murdered, as I have said, is beyond all question. In my judgment, although it is a matter entirely for you, the person who murdered her, taking into consideration the nature and character of the wounds, the utter absence of any evidence of a struggle, and the whole surroundings of the case, would be guilty of murder in the first degree." And in another portion, in commenting upon the evidence, said, "The boy gives a description, minute and in detail; and shortly afterwards, he gives another description, minute and in detail; and shortly afterwards, he gives another description, minute and in detail, and so on until he describes more or less minutely, if I have remembered the testimony, five individuals of a distinct personality."

The result of the trial was a verdict of murder in the first degree. Motions in arrest of judgment and for a new trial were overruled and the prisoner was sentenced to be hung.

This writ was then taken in his behalf, the errors, *inter alia*, assigned being: 1. In ruling that the custody of the jury wheel was sufficient in law. 2. In ruling that the jury wheel was sealed according to law. 3. In overruling the motion to quash the array. 4. In overruling the challenge for cause as to the juror, Lorah. 5. In overruling the challenge for cause as to the juror, Yahn. 6 and 10. The portions of the charge above quoted.

*H. A. Stevens* and *H. U. Bruner*, for the plaintiff in error.—
The Act of 10th of April 1867, Pamph. L. 62, requires that "the jury wheel shall remain in the custody of the jury commissioners." The custody contemplated is actual, personal custody. The jury wheel here was not in the custody of any one, the treasurer in

[Curley v. Commonwealth.]

whose vault it was placed, having no responsibility respecting it. In Rolland and Johnson v. Commonwealth, 1 Norris 306, the wheel was in the custody of a sworn officer of the board of jury commissioners.

The Act of 14th of April 1834, Pamph. L. 357, requires that the sheriff and jury commissioners shall impress distinctly upon the wax on the wheel, their respective seals. Here the wheel was sealed with but one seal. This, it is submitted, is fatal: Brown v. Commonwealth, 23 P. F. Smith 321.

Where a juror has a fixed and determined opinion as to the guilt or innocence of the prisoner he cannot serve : Staup v. Commonwealth, 24 P. F. Smith 458 ; Commonwealth v. Flanagan, 7 W. & S. 420.

The court encroached upon the functions of the jury in the portion of the charge contained in the sixth assignment: Kelley v. Commonwealth, 1 Grant 484; Lane v. Commonwealth, 9 P. F. Smith 371.

*Jacob V. Gotwalts*, District Attorney, and *B. M. Boyer*, for the Commonwealth.—A like custody of the jury wheel, in every material respect, was held to be sufficient in Rolland and Johnson v. Commonwealth, 1 Norris 306. A more effective method than that adopted here could not be devised to secure a jury wheel. Each commissioner wrote his name on a slip of paper and covered with the wax it was impressed with the only device the commissioner had. The law does not require that each shall have a different device. The overruling of the challenge to the two jurors is sustained by Ortwein v. Commonwealth, 26 P. F. Smith 414 ; Staup v. Commonwealth, 24 Id. 458 ; O'Mara & Irving v. Commonwealth, 25 Id. 424.

Chief Justice AGNEW delivered the opinion of the court, May 7th 1877.

The first assignment of error is not supported. The law has not provided an office for the jury commissioners, nor a place of safety for the custody of the jury wheel. Hence they did the best in their power for its custody, by making an arrangement for its safe keeping in the vault of the county treasurer, and upon the condition that no one but a jury commissioner *should* enter the vault for the wheel. The evidence shows satisfactorily that the wheel was sealed and the seals were unbroken, and not tampered with. There was no suspicion of any real ground of challenge, either as to the custody or the condition of the wheel. The second exception is not supported by a proper bill of exceptions. If it had been, though evidently without real merit in this case, we might have been forced to sustain the assignment. But the challenge to the array was made upon two distinctly stated grounds, which were

[Curley *v.* Commonwealth.]

denied by the Commonwealth, neither having any relation to the sealing of the wheel. These grounds formed the issue upon which the evidence was taken, and to which the exception to the decision of the court must be presumed to refer. What was added, as to the sealing in the certificate of the judge, was therefore extraneous and irrelevant. The merits of the case do not require us to strain a point in order to reach a substantial error not otherwise tangible. But to prevent a misunderstanding of our opinion we may add that, in our judgment, it is not proper for the jury commissioners and sheriff to use one and the same seal, no matter how many impressions are made by it. The sheriff and jury commissioners should each have and use his own seal, so that he alone shall have its custody. If but one seal be used for all, but one person can have its custody, who, if disposed, could break the seals and replace them, thus affording an opportunity of tampering with the wheel. If each keeps his own seal this cannot be done.

The third assignment of error falls with the dismissal of the first and second.

The fourth and fifth relate to challenges to the polls. The case of A. K. Lorah falls within the rulings in Ortwein *v.* Commonwealth, 26 P. F. Smith 414; O'Mara *v.* Commonwealth, 25 Id. 424, and one branch of Staup *v.* Commonwealth, 24 Id. 458.

The case of Joseph M. Yahn requires more consideration. This juror said he had formed and expressed an opinion, and that it was fixed and determined from what he had read, From this it is argued that his case falls within the principle of exclusion stated in one branch of the case of Staup, *supra*. This is only apparent, not real. In Staup's case it was said that: " Whenever the opinion of the juror has been formed upon the evidence given at a former trial, or has been so deliberately entertained that it has become a fixed belief of the prisoner's guilt, it would be wrong to receive him." " But where the opinions or impressions of the juror are founded on rumor or reports, or even on newspaper statements, which the juror feels conscious he can dismiss; where he has no fixed belief or prejudice, and is able to say he can fairly try the prisoner on the evidence, freed from the influence of such opinions or impressions, he ought not to be excluded." An opinion is not the exact equivalent of a belief. It may be simply a judgment formed upon a given statement of facts, which will yield when the facts stated disappear. A belief of another's guilt may be a prejudice and exist with little or no evidence. A fixed belief of guilt shuts the door against explanatory evidence, and renders the judgment unsound. Hence the distinction taken in Staup's case. An opinion formed on the same evidence to be adduced in the trial necessarily affects the juror's power to decide impartially. So, an opinion which has become a fixed belief of the prisoner's guilt, even without evidence, disables the juror from performing his duty with

fairness to the prisoner. But in Yahn's case no such opinion or belief was shown. The juror was not asked on what his opinion was founded. It might have been the merest unreliable newspaper statements. When he said his opinion was fixed and determined from what he had read, he evidently did not mean, that he had a fixed and determined belief of the prisoner's guilt, for he followed this up immediately by, saying, "It is not such an opinion as would influence or control me in any degree as a juror. It would not influence me to give an undue weight to evidence against the prisoner. I feel certain, that as a juror, I could divest my mind of all prejudice and be controlled by the evidence." Now we find here no opinion formed upon the evidence to be given, no fixed belief of guilt. We see no reason, therefore, to hold that the juror was incompetent on either ground.

There is no error in the charge of the judge sufficient as a cause of reversal. His opinion as to the degree of the murder was not delivered as binding on the jury, or as a conclusion against the prisoner. It referred only to the state of facts as found upon the discovery of the body of the deceased. An elderly maiden lady, in good health, is left alone, engaged in ordinary household duties in the morning. In the evening she is found alone, lying on the floor in a pool of blood, and the objects around her are found stained with its spurting streams. Her skull has been battered with a heavy instrument having a large square head, such as the poll of an axe or of a mason's hammer of large size. Ten wounds are found upon her head made with such an instrument, eight of which were mortal, crushing in and fracturing the skull at every stroke. It was of such a murder the judge spoke. But the jury were left to decide for themselves upon all the evidence. The only real question in the case was the identity of the offender; and this was fixed upon the prisoner by many and various circumstances, leaving no reasonable doubt of his guilt.

The judge stated the facts of the case with great fairness, except that in one instance he appears to have fallen into error. But it was left fully to the jury. The matter referred to is the description given by the prisoner of the person of the " tramp" he alleged came to the house at dinner time. The judge said he had given five different descriptions in relating the matter to different witnesses. We do not discover this number of variations in substantial matters of description. Yet there were such variations as will often arise in stating the same thing at different times; that is, not absolute contradictions, but variations from different degrees of fulness, or from indifference to precision. These, however, were matters left to the jury, and of which they were quite competent to judge—indeed, in the combination of so many memories, perhaps were more likely to be accurate. We think this is not such a substantial error as to demand a new trial. The errors assigned to the alleged misconduct

[Curley *v.* Commonwealth.]

of the jurors and their officer are not supported by any bill of exceptions. The evidence is therefore not legally before us. There is nothing else in the case worthy of notice. The sentence of the court is therefore affirmed, and the record is ordered to be remitted for execution according to law.