## Williams *versus* Commonwealth.

1. In the trial of an indictment of a sheriff for perjury in taking the oath of office prescribed by art. 7, sect. 3, of the constitution, the court sustained a challenge to the array of jurors made by the Commonwealth and ordered a *venire* for twenty-four traverse jurors to be immediately summoned from the bystanders, or from the body of the county at large. The coroner being sick, elisors were appointed, who summoned the jurors, and the court proceeded with the trial. *Held* to be error.

2. Sect. 41 of the Criminal Procedure Act of 1860 authorizes all courts of criminal jurisdiction, when occasion shall render the same necessary, to order a *tales de circumstantibus*, either for the grand or petit jury. A tales by its very name signifies a returning of so many as will make up the full complement; and therefore it is not granted when there is a total default, but only when the number is deficient.

3. Two witnesses to the falsity of the matter on which the perjury is assigned are not essentially necessary, for if any material circumstance be proved by other witnesses in confirmation of the witness who gives the direct testimony of perjury it may turn the scale and warrant a conviction.

4. Where there are several assignments of perjury it seems that in addition to the testimony of a single witness there must be corroborative proof with respect to each, and this although all the perjuries were committed at one time and place.

5. An indictment which charges the crime substantially in the language of the Act of Assembly is sufficient under the Criminal Procedure Act of 1860. The accused may, however, apply to the court or a judge for an order for a bill of particulars, and on the trial the Commonwealth will be restricted to the items specified.

6. Under art. 7 of the constitution and the Act of 1874 a candidate for office may pay and contribute for printing, travelling expenses, the dissemination of information to the public, political meetings, demonstrations and conventions, and may make interest, without corruption, and use art, without abusing it, to secure his election, but must not, either directly or indirectly, purchase the vote or influence of an elector, or do any act for any corrupt purpose whatever incident to the election.

[Williams *v.* Commonwealth.]

October 30th 1879.   Before SHARSWOOD, C. J., MERCUR, GOR-DON, TRUNKEY and STERRETT, JJ.   PAXSON and GREEN, JJ., absent.

Error to the Court of Quarter Sessions, of *Armstrong county :* Of October and November Term 1879, No. 65.

Indictment of George A. Williams, sheriff of Armstrong county, for perjury.

Williams was the Republican candidate for sheriff of said county and was elected and duly commissioned.   He assumed the duties of his office on January 1st 1877, taking and subscribing to the oath of office.   The information charged him with perjury as to the part of the oath as follows : " I have not paid or contributed, either directly or indirectly, any money or other valuable thing, to procure my election, except for necessary and proper expenses expressly authorized by law.   I have not knowingly violated any election law of this Commonwealth or procured it to be done by others in my behalf."

On the 15th of August 1878, the same day the information was made, Williams appeared before a justice and gave bail for his appearance at the next term of the Quarter Sessions in September 1878.   At the September sessions of said court, the grand jury found a bill of indictment against him, which recited the portion of the oath above set forth, except that the words "nomination or " were inserted between the words "my" and "election." The indictment had three counts, the first and second in the words of the oath ; the third "that he, the said George A. Williams did, before and previous to taking the oath aforesaid, and signing the same, and previous to his said election, pay and contribute and promise to pay and contribute, money and other valuable things to procure his nomination for the office of sheriff."

On the 11th December 1878, when the cause was called for trial, and before plea pleaded or jury sworn, the defendant's counsel moved the court to quash said indictment, because :—

1. The grand jury, by whom the same was found, was not properly constituted, and the Commonwealth was permitted to exclude therefrom two members, viz. : Benjamin Oswald and John Crim, who were duly served and in attendance at said sessions as grand jurors, and the Commonwealth was allowed to interrogate, and did interrogate, the members of the grand jury upon their *voir dire* as to their opinion relative to said prosecution, except Frank Mateer, who was known (not to the court) to have expressed opinions strong and decided against the defendant, and who was permitted by the Commonwealth to be sworn, and served upon the grand jury in said cause, without being interrogated or sworn upon his *voir dire.*

2. The said indictment does not specify or name the person or persons to whom the alleged promises, contributions or payments were made, or the circumstances, nature or amount of such promises,

contributions or payments, or the times and places thereof, or in what respect or how, and by what manner or means the defendant violated or caused to be violated the election laws of this Commonwealth.

The court, Boggs, P. J., overruled the motion, but said it would be heard and considered on motion for a new trial, or in arrest of judgment. Exception by defendant's counsel and bill sealed.

And thereupon the defendant pleaded not guilty. Immediately thereafter the counsel of the Commonwealth challenged the array of traverse jurors for the reason that they had been summoned by the defendant as sheriff, which challenge the court sustained and ordered a *venire* for twenty-four persons for jurors, and the coroner being sick and not able to summon the jurors, appointed Joseph Clark and C. C. Jessup elisors to summon twenty-four persons as traverse jurors from the bystanders or from the body of the county at large. The elisors named proceeded to a neighboring hotel and selected and summoned twenty-four persons as said jurors. They made return as follows:—

"List of the names of th persons summoned to serve as traverse jurors in the Court of Co n Pleas, to be holden at Kittanning, in and for the county of A strong, commencing on the 11th day of December A. D. 1878, o'clock, P. M." (Here followed a list of the names simpl w any residence or occupation.)

"We do hereby na ti hat the foregoing is an accurate list of the names of perso e moned by us for jurors, to meet the 11th day of December, co 878, from the body of the county of Armstrong, according t t writ hereto annexed, dated 11th day of December A. D. 187

Witness our han at Kittanning, this 11th day of December A. D. 1878.

JOSEPH CLARK,<br>
C. C. JESSUP,<br>
Elisors."

The jurors were then called, when defendant challenged C. N. Henry, for cause, in that the said Henry was the competitor of said defendant for the office of sheriff of Armstrong county, at the general election in said county, in November 1876, at which the breaches of the election laws are alleged to have been committed by defendant.

To this challenge, the Commonwealth demurred, and the court sustained the demurrer, and allowed the juror to sit and try the cause.

The Commonwealth called a number of witnesses, who testified relative to promises, payments, &c., alleged to have been made by defendant to secure his nomination. In the general charge, the

[Williams *v.* Commonwealth.]

court withdrew this point, but by some inadvertence the defendant's first point, requesting the withdrawal of this evidence, was refused.

The defendant submitted the following points, to which are appended the answers of the court:

1. The court is respectfully requested to withdraw from the jury all evidence relative to any of the alleged payments, contributions or promises made by defendant to procure his nomination as sheriff, and to instruct the jury to wholly disregard the same, and that their verdict must be not guilty upon the last count of the indictment.

Ans. "Refused."

2. That in this case the Commonwealth is required to prove by the oaths of two witnesses, or by the oath of one witness and corroborative facts equal to the oath of another witness, each specific, corrupt promise, payment or contribution which they charge the defendant with having made or paid, and that it is not sufficient to prove one corrupt act by one witness, and another corrupt act by another witness.

Ans. "Affirmed as explained in general charge."

In the general charge, the court, inter alia, said:

"The case you were sworn to try is the prosecution by the Commonwealth *v.* George A. Williams, charging him with corruptly violating the organic law of this Commonwealth. * * * The allegations on the part of the Commonwealth on the one hand, and on the part of the defendant on the other hand, form the issue you were sworn to try and determine from the evidence in the cause, and the law as laid down to you by the court for your guidance. * * * * * Now, you will determine how the issue in this case, is from the evidence in the cause, having regard to the law given by the court. * * * The learned counsel for the defendant contends that this organic law was not intended to apply to individuals, but only to combinations of parties and owners of manufacturing establishments; but I am constrained to say such is not the true meaning of the law. I instruct you that this organic law is intended to apply not only, as is contended by the learned counsel, to combinations of persons and owners of manufacturing establishments, but also to individuals.

" * * * Here I remark that some of the witnesses, perhaps one or more, spoke of having to go to electioneer; some called it to work for the defendant, but Webster thus defines the word, 'Electioneer,' to make interest for a candidate at an election; to use arts for securing the election of a candidate. Here I remark, if you find from the evidence in the cause, that the defendant did pay or contribute, or promise to pay or contribute, either directly or indirectly, any money or valuable thing to procure his election, except for necessary and proper expenses expressly authorized by law, if you so find, then the law presumes it was done knowingly and wilfully.

[Williams v. Commonwealth.]

So you observe, if you find from the evidence in the cause that the defendant did as charged in the bill of indictment, pay or contribute, or promise to pay or contribute, either directly or indirectly, any money or other valuable thing to any elector who was called and testified in this case for his vote, or for the purpose that such elector should make interest for the defendant when he was a candidate before his election, and before he took his oath of office; or in other words, if he did pay or contribute, or promise to pay, such elector, either directly or indirectly, any money or other valuable thing for his vote, or for the purpose that the elector should use arts for securing the election of the defendant as a candidate for sheriff of this county, if you find this to be true from the evidence in the cause, then your verdict should be that of guilty, in manner and form as he stands indicted, in the first and second counts of the indictment. ·

"Here I instruct you, that it is a general rule that the testimony of a single witness is insufficient to convict on a charge of perjury, and there must be such other circumstantial evidence of facts as is equal to another witness. Such corroborative facts, proved by other witnesses as is equal to a second witness. If other material facts and circumstances be pro by other witnesses in confirmation of the witness who gives the testimony of perjury, it is sufficient; some other independ evidence, equal to another witness, should be produced.

"I am asked by the learned counsel for the defendant to instruct you that such rule must be observed, respecting each specific corrupt promise, payment or contribution charged, and that it is not sufficient to prove one corrupt act by one witness, and another corrupt act by another witness. This request, as I understand it, I cannot sustain.

"You will consider well and carefully all the evidence in the case, and ferret out the plain, naked truth; and, as you find the truth, one way or the other, so should be your verdict. You are to follow in the light of the evidence, and determine from the evidence, and from it alone, the issue in the cause."

Verdict, "guilty in manner and form as he stands indicted." The court afterwards overruled a motion in arrest of judgment, and sentenced the defendant to pay a fine of $100 to the Commonwealth, the costs of prosecution, and to undergo an imprisonment in the Western Penitentiary for two years and one month.

The defendant took this writ, and, inter alia, made the following assignments of error: 7. The order sustaining the challenge to the array; ordering a venire and appointing the elisors. 8. The precept to the elisors. 12. The refusal of defendant's first point. 13. The answer to his second point. 14. The portion of the charge set forth above. 15. The overruling of the motion in arrest of judgment, and 16. The sentence.

[Williams *v.* Commonwealth.]

*J. H. McCain, F. Mechling* and *J. Gilpin,* for plaintiff in
error.—The Commonwealth cannot challenge a grand juror in any
other manner than a private person, and the defendant cannot ex-
amine grand jurors on their *voir dire* as to the alleged cause of
challenge. The jurors should have been taken from the jury-wheel
and not selected by the elisors. The evil of such a course is
manifest in this case, where the elisors went to a hotel, which was
the Democratic headquarters, and from the registry of the hotel
and those standing around selected the panel.

The defendant, Williams, could get from the indictment not a
scintilla of information as to what act or words, done or uttered
(during the campaign two years previously), the Commonwealth
complained of. No person's name, save that of himself and of the
recorder before whom he was sworn, is mentioned in the indictment
from its caption to the signature of the district attorney. It no-
where states what he paid or gave, promised to pay or give, whether
money, chattels, lands or appointments, or how the election laws or
the constitution was violated.

In the construction given to art. 7 of the constitution and to the
Act of 18th April 1874, which was passed to enforce it, it did not
fully state the construction conter  for by the defendant's coun-
sel, which was and is, that said    le and act were intended to
prevent a candidate from purchasi  wi. h money, promises or con-
tribution, either the votes of electors from the electors themselves;
as, for instance, going to one and offering or paying him so much
money to vote for the candidate, or the control of votes; that is
influence; as for instance, the candidate going to the officers of a
political club and paying to them money in consideration of the
club and its members voting for him, or going to the officers of a
railroad company or other corporation, and in consideration of their
compelling their employees, by threats of discharge or otherwise,
to vote for him, paying money to said officers, or promising to pro-
cure benefits (e. g. beneficial legislation) for the corporation; or
going to a manufacturer and paying him money to induce him to
use his power, as master over his employees, to induce or compel
them to vote for him (the candidate). And that neither the article
nor the act was intended to prevent a candidate, say for governor,
residing in Philadelphia, and perhaps not personally known in the
oil country, who learns that damaging and slanderous reports
are being circulated about him in the oil district, which will
defeat him unless refuted, and which he can only refute by sending
his friend, in whom the oil people have confidence, to personally
refute and contradict the stories, from sending such friend, and if
necessary, paying him for the time lost, and expenses incurred in
going, delaying and returning.

. A suitor in a court of justice is allowed to pay an advocate to
electioneer for him (e. g. use arts, for Gorgias demonstrates that

rhetoric is an art) with a jury sworn in the cause. The words for dissemination of information to the public, not dissemination of public information used in the Act of 18th April 1874, were doubtless intended to have some meaning.

Where there are several assignments of perjury in addition to the testimony of a single witness there must be corroborative proof with respect to each: Greenleaf on Evidence, sect. 257.

*J. R. Henderson,* District-Attorney, for defendant in error.— This is the first indictment under the constitution of 1874, in reference to elections, and demands the most serious attention of the court.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1880.

When the case was called for trial, the court sustained a challenge to the array of jurors made by the Commonwealth, and ordered a *venire* for twenty-four traverse jurors to be immediately summoned from the bystanders, or from the body of the county at large ; and to this action the defendant excepted. In obedience to said order, return was made forthwith, and the cause called for trial, against the defendant's objection. No argument has been made in support of this unusual, if not unprecedented procedure, other than a reference to the opinion of the court, which rests it on the Act of April 14th 1834, sects. 146, 147, Pamph. L. 367. These sections refer to civil cases ; the former providing that when a challenge to the array of jurors shall be made by either party to a cause, and sustained by the court, so that there shall be no jury present legally qualified to try the same, the court shall have power, at the instance of either party, to award a *venire* returnable forthwith for the trial thereof; and the latter, that every such *venire* shall be directed to the sheriff or coroner, or if the case so require, to two elisors, and shall require him or them to summon and return forthwith twenty-four good and lawful men to be jurors in such case, and upon return thereof the trial shall proceed. Section 148 provides that a court having jurisdiction of any criminal cause, shall " have the like power, whenever a challenge to the array shall be made by the defendant and sustained by such court, so that no jury shall be present legally qualified to try such cause." It is plain that the provisions of these sections do not apply in a criminal case where the challenge is made by the Commonwealth. The first two apply when either party to a civil cause makes the challenge ; the last gives like power to courts having jurisdiction of criminal cases, when a defendant's challenge is sustained. Familiar rules of interpretation forbid extending the last to a case not named therein. Probably the legislature thought there was good reason for not allowing a public prosecutor to come into court, challenge the array of

[Williams *v.* Commonwealth.]

jurors, and immediately force a prisoner to trial before those selected in absence of all statutory safeguards against packing the jury.   It is public policy to prevent delays in trials by trivial objections to the jury, and it may have been believed in the interest of justice to permit a defendant's challenge to be followed by trial as in civil cases.   He takes that risk in making the challenge; yet, I apprehend, few district-attorneys or judges would refuse a continuance until a regular jury could be obtained, if the challenge were not merely for delay, but for meritorious cause.

By section 41 of the Criminal Procedure Act of 1860, it is enacted that "all courts of criminal jurisdiction of this Commonwealth shall be and are hereby authorized and required, when occasion shall render the same necessary, to order a *tales de circumstantibus*, either for the grand or petit jury.   This is a summary of much contained in the sections referred to above of the Act of 1834, including also section 145 of said act; but those sections are not repealed.   By itself, the summary authorizes the calling of talesmen in no case when a *venire* has not been issued and returned with a panel of jurors present.   A tales, by its very name, signifies a returning of so many as will make up the full complement; and, therefore, it is not granted where there is a total default, but only where the number is deficient: 1 Chit. Cr. L. 518. The first process for convening the jury is the venire facias, and thereupon then issue the *habeas corpora* and *distringas juratores.* If all the jury do not attend, or if so many be challenged and drawn that there do not remain a sufficient number to make a jury, there are at common law the writs of *undecim, decem,* or *octo tales,* according as the number was deficient, or by statute, the plaintiff may pray a *tales de circumstantibus* to prevent the delay of the *decem tales:* Bacon's Ab. tit. *Juries,* C.   But if the whole of the jury be challenged off, then a new venire facias, and if none appear, then a *distringas juratores* shall issue and no *tales:* Id. B. 2.

By the statutes of this state, ample provision is made for the impartial selecting, summoning and returning of jurors in the courts of criminal jurisdiction.   The Court of Quarter Sessions has power, whenever the public business shall require it, to fix adjourned or special courts for trial of criminal cases; but if this were not so, and if a cause be continued it cannot be tried till the next term, there is no authority for calling a jury forthwith from bystanders, or the body of the county, to try a prisoner who has not challenged the array.   Both letter and spirit of the statutes secure to persons charged with crime a trial when a regular panel of jurors is in attendance, and only for deficiency in the number can talesmen be called.   When the array is quashed there is no jury—that is no more a necessary occasion to order a *tales de circumstantibus* than it would be had none been drawn, summoned and returned.   " The next desideratum to the pure administration of justice is the giving

[Williams *v.* Commonwealth.]

satisfaction to the suitors, that their causes have been fairly and impartially decided." Were a man, holding an office, indicted for perjury in his official oath, in that he had falsely sworn that he had not paid money or other valuable thing to procure his election except as expressly authorized by law, brought to trial before a jury not selected, drawn and returned as the law provides, but selected and summoned by a sheriff, coroner, or two citizens on the day of trial, who returned a panel of which four-fifths were the names of his political opponents, including that of the defeated candidate for the same office, no matter if his guilt were clearly proved, he would naturally feel that his conviction was an outrage done in the name of justice. Such cases, and even worse, might arise if the law permitted the Commonwealth's counsel to challenge the array of jurors and, upon it being sustained, to forthwith compel the defendant to go to trial with a panel selected from the spectators and persons attending the court. The seventh, eighth, fifteenth and sixteenth assignments are sustained.

It is a general rule that the testimony of a single witness to the falsity of the matter on which the perjury is assigned, is insufficient to convict on a charge of perjury. Two witnesses are not essentially requisite, for if any material circumstance be proved by other witnesses in confirmation of the witness who gives the direct testimony of perjury, it may turn the scale and warrant a conviction. " When there are several assignments of perjury, it does not seem clearly settled whether in addition to the testimony of a single witness there must be corroborative proof with respect to each, but the better opinion is that such proof is necessary, and that, too, although all the perjuries were committed at one time and place: 1 Greenlf. Ev., sect. 257, a. Thus, A., in an affidavit, stated that he had paid all the debts proved under his bankruptcy, except two; on an indictment for perjury on this affidavit, one of the assignments was that A. had not paid all the debts proven except two, and another that certain other creditors were not paid in full; in support of the indictment several creditors were called, who each proved the non-payment of his own debt: *Held*, that this was not sufficient to warrant conviction, and that as to the non-payment of each debt, it was necessary to have the testimony of two witnesses or of one witness, and some circumstance to supply the place of a, second witness: Regina *v.* Parker, 1 C. & M. 639 (41 E. C. L. R. 346); see 2 Rus. on Cr. 654. The weight of authority and the general rule require that where an indictment contains several assignments of perjury, in order to convict on any one, there must be either two witnesses or one witness, and corroborative evidence to negative the truth of the matter in such assignment. The defendant's second point was affirmed as explained in the general charge. The explanation ought to have been that the Commonwealth is required to prove by two witnesses or one witness, and

[Williams *v*. Commonwealth.]

corroborative evidence, at least one corrupt payment, contribution or promise which the defendant is charged with having made or paid; and, though each of several of such acts be proved by a single witness, if none be proved by two witnesses or by one witness, and corroborative proof of circumstances, there could not be a conviction. We think the learned judge so intended; yet it is urged that he permitted the jury to treat the several acts as corroborative of each other—they should have been clearly instructed that proof of a corrupt act by one witness was not corroborative evidence of another which was proved by a different witness.

In reference to defendant's first point, it is only necessary to say that the word "refused" seems to be a mistake, for it is affirmed in the charge, the court saying, "you will discard any evidence that was given on that count as withdrawn from your consideration, and confine your deliberations to the first and second counts, and the evidence on those two counts."

The indictment is sufficient under the Criminal Procedure Act, and the motion to quash was rightly refused. It does not furnish sufficient information to enable the defendant to prepare his defence, and this may often occur where the law declares an indictment good, "which charges the crime substantially in the language of the Act of Assembly prohibiting the crime, and prescribing the punishment, if any such there be, or, if at common law, so plainly that the nature of the offence may be easily understood by the jury." Prior to 1860, when greater particularity was required in setting out the offence in the indictment, it sometimes failed to give the defendant such notice as he was entitled to, of the specific matters which would be attempted to be proved against him on the trial. Whenever such is the case, the accused may apply to the court or judge for an order that a bill of particulars be filed, and on the trial the Commonwealth will be restricted to the proof of the items contained therein: Rex *v*. Hodgson, 3 C. & P. 422; Rex *v*. Bootyman, 5 Id. 300; Commonwealth *v*. Snelling, 15 Pick. 321. Doubtless, had the defendant made application, a bill of particulars would have been ordered. In simplifying indictments, it was not the intendment to make their brief and comprehensive terms a cover for snares to be sprung on the accused. Whether a refusal to order the bill would be a subject of review, is a question not now raised.

Only one other point, which is in the fourteenth assignment, requires notice. The court was right in ruling that the Act of 1874 applies not only "to combinations of persons and owners of manufacturing establishments; but also to individuals;" and that if the defendant paid or contributed, or promised to pay or contribute, either directly or indirectly, any money or other valuable thing to any elector for his vote or influence, he was guilty. But not resting there, it was also held that if he so paid or promised to

[Williams *v.* Commonwealth.]

any one to electioneer for him, that was a violation of the statute; and the word electioneer was defined : " to make interest for a candidate at an election ; to use arts for securing the election of a candidate." Art. 7 of the constitution requires an officer, before entering on the duties of his office, to take an oath containing, inter alia, " I have not paid or contributed, or promised to pay or contribute, either directly or indirectly, any money or other valuable thing to procure my nomination or election (or appointment), except for necessary and proper expenses expressly authorized by law ; that I have not knowingly violated any election law of this Commonwealth, or procured it to be done by others in my behalf." Sect. 9 of art. 8 imposes severe disabilities on " any person who shall, while a candidate for office, be guilty of bribery, fraud or wilful violation of any election law." The Act of 1874, sect. 36, Pamph. L. 64, authorizes a candidate to pay or contribute as follows : " 1. For printing and travelling expenses ; 2. For dissemination of information to the public ; 3. For political meetings, demonstrations and conventions ;" and sect. 37 declares that " nothing contained in this act shall be so construed as to authorize the payment of money or other valuable thing for the vote or influence of any elector, either directly or indirectly, at primary, township, general or special elections, nominating conventions, or for any corrupt purposes whatever incident to an election." Both the organic law and the statute strike at bribery, fraud and every corrupt act incident to an election, but leave the candidate free to use all honest means for the success of his party and promotion of his own election. He may disseminate information to the public respecting affairs of state, the principles, the purity and the corruption of the several political parties, and the merits and demerits of candidates ; and in so doing he may use every honorable art of persuasion, eloquence and reasoning. These are lawful, are within the very life of free government, and are not forbidden to a candidate, though they make interest for him at an election. The statute carries its own interpretation. In comprehensive terms it expressly authorizes payments and contributions by candidates for printing, travelling expenses, dissemination of information to the public, political meetings, demonstrations and conventions, and excepts out every direct and indirect purchase of the vote or influence of an elector, and every act for any corrupt purpose whatever incident to an election. What is clearly embraced within those terms and not excepted therefrom, is lawful. Interest may be made for a candidate without taint of corruption. Art may be used in securing his election, with pure motive and patriotic purpose. The statute forbids the perversion of art, not its use. We are, therefore, of opinion that it was error to unqualifiedly charge, that if the defendant paid or contributed, or promised to pay or contribute, either directly or indirectly, any money or other valuable thing, to an elector, "for the purpose that

[Williams *v.* Commonwealth.]

such elector should make interest for the defendant when he was a candidate before his election," * * * "or for the purpose that the elector should use arts for securing the election of the defendant as a candidate for sheriff," then the verdict should be guilty. However, where the evidence requires, such instruction ought to be given, with the addition that the jury also find the elector's influence was purchased, or that he was to make interest by bribery, fraud or other illegal means, or that he was to use wicked and corrupt arts in securing the election of the candidate.

> Judgment reversed, and the record, with this opinion, setting forth the causes of reversal, is remanded to the Court of Quarter Sessions of Armstrong county, for further proceeding.