# Commonwealth v. Nye, Appellant.

*Criminal law—Murder—Summoning jurors—Act of April 14, 1834, P. L. 333—Selection of jury—Challenge for cause—Motion to quash array—Charge of court.*

1. The provisions of the Act of April 14, 1834, P. L. 333, relating to the method of summoning jurors, are directory in character. They do not prescribe or bear upon the substance of any duty, but merely upon the manner of its performance. It is no ground for quashing an array of jurors, therefore, that the sheriff had summoned them by mail instead of by delivering separate tickets to each in the manner prescribed by the act, where it appeared that all the jurors summoned except six acknowledged receipt of the notices and were present in court when the case was called for trial. It is not ground for challenging an array of jurors that some of them do not attend, especially where, as in this case, more than the statutory number of forty-eight were actually present.

2. It is proper for the court in the trial of a murder case to direct the jurors to be examined in accordance with the Act of March 6, 1901, P. L. 16, although the method of examination designated by that act may be contrary to a custom previously obtaining in the courts of the said county.

3. In summoning jurors in a murder case, the sheriff has no right to interrogate them as to whether they have conscientious scruples on capital punishment, or have formed an opinion as to the guilt or innocence of the defendant. If he does so, the panel so summoned will, upon motion, be discharged; but where the court, when the matter is called to his attention, asks counsel for defendant whether they desire to make a motion to discharge the panel stating that if such a motion were made he would sustain it, and defendant's counsel decline to make it, they cannot thereafter raise the point nor challenge individual jurors for cause on that ground. Their action amounts to a waiver of the irregularity in the conduct of the sheriff, and is an indication that, in the judgment of counsel, defendant was not prejudiced by such action.

4. Where in a murder case the entire panel of jurors summoned was exhausted and a special venire was issued, and the sheriff summoned twelve additional jurors from the county, it is no ground for quashing the array that seven of the twelve were from the borough where the murdered man resided and where the crime under investigation was committed, particularly where it appears that only one additional juror was needed at the time the venire went out, that only four of the twelve summoned were called and that the fourth, who was accepted by the defendant, was not a resident of said borough.

5. Where in a murder case jurors are examined on their voir dire and state that they have formed an opinion as to the guilt or innocence of the defendant, but that they can lay aside that opinion and decide the case on the evidence alone, the court commits no error in overruling challenges for cause. The established test is whether or not the juror can throw aside his impression or opinion and render an impartial verdict on the evidence alone. That question the juror alone can answer and the weight of his answer is not to be determined exclusively by his words as they appear in print in the record, but by his words, manner and bearing as to which a fair measure of discretion must be allowed to the court below which had the juror before it.

6. In the trial of an indictment for murder committed in the perpetration of a robbery, it is proper for the judge to submit to the jury the issue as to whether the defendant was concerned in the robbery or was aiding and assisting therein at the time when the deceased was killed, and to comment upon the evidence indicating the defendant's participation in the crime, provided he does so fairly and without laying undue emphasis upon the side of the Commonwealth. It is not error to charge that the presumption of innocence was "in favor of the prisoner until the proof fairly establishes his guilt," where this is coupled with other instructions clearly indicating that the jury must be satisfied beyond a reasonable doubt that the defendant was guilty, before they could convict him.

7. The court may in a murder case properly instruct the jury to disregard the argument of counsel for defendant where such argument was not based upon evidence in the case.

*Appeals—Assignments of error—Criminal law—Quashing array —Jurors—Challenge.*

8. An assignment of error complaining because the court did not quash an array of jurors is defective if it does not contain the motion to quash, the ruling of the court thereon, and the exception of the defendant thereto.

9. Assignments of error in a murder case, to the action of the court in overruling defendant's challenges for causes of two jurors, are defective if they do not quote the bill of exceptions or set forth the grounds of challenge in so far as they appear from the ruling of the judge.

Argued Feb. 24, 1913. Appeal, No. 29, Jan. T., 1913, by defendant, from judgment of O. & T. Northumberland Co., May Term, 1912, No. 4, on verdict of guilty of murder of the first degree, in case of Commonwealth of Pennsylvania v. Frederick Nye. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Indictment for murder. Before CUMMINGS, P. J.

The evidence showed that the deceased was killed in the perpetration of a robbery in which the defendant was concerned. The court charged in part as follows:

"It is just as certainly established that Henry Miller was killed while in the perpetration of a robbery, or of an attempt to perpetrate a robbery, as it is established that he was killed at all." (9)

"Of course, if you believe that Nye and Everitt never talked of this robberty or attempt to commit a robbery in advance, and that Everitt left Nye that night presumably to buy a cigar and that Nye walked down towards the station and was overtaken by Everitt sometime afterwards (at Chestnut Street) and given some money by Everitt and told that he had robbed a man and that he, Nye, should keep quiet, and that Nye knew nothing of the killing and had no part in it or in the robbery, then of course Nye could not be convicted of the crime of murder." (10)

"How does his story agree with that of the witnesses who found the shells in the Donnel lot as told by Everitt? How does this story agree with that of the little boy from Glen Mills who said that he met Nye on Monday or Tuesday before the murder, on the corner of Spruce and Market streets in Shamokin, whei Nye said 'I am going

to rob a party in Sunbury and if you hear of a murder there you will know who done it,' or words to that effect? How does it tally with the evidence of the two girls who said that he had a roll of bills on the day after the commission of the crime and that when they saw him in the lockup in the Borough of Shamokin and asked if he had committed the crime he stated that 'He had not but that there were five others, and he knew who did it, but that he would not squeal if he had to stretch the rope'? How does it compare with the testimony of the merchant from whom he made a purchase on Monday morning amounting to $3.75 paying for the same in nickles? He having handed him an envelope supposed to contain $5.00 in nickles, but when counted by the merchant, found to contain only $4.90. How does it compare with the testimony of the boarding mistress who testified that he had asked her to wait for his board for a week or so and then his paying her the board on Sunday morning after returning from Sunbury? How does it compare with his own testimony that the money was hidden in his room on Sunday morning where he and Everitt slept together and that he had divided the money after Everitt departed the next morning, and he upon meeting Everitt on the street gave him his share of the bills telling him that he should come over and get his share of the other moneys"? (11)

"Now, if you believe the testimony and are satisfied that this defendant had no connection with the robbery or murder, but honestly went to Chestnut street as testified to by him, then he ought not to be convicted of the murder of Harry Miller. In determining, however, whether he was guilty of participating in the robbing and killing of Harry Miller, you must consider all the evidence in the case, his purpose of going into the pool room, if he did go in, as testified to by Everitt, his subsequent conduct when he met Everitt at Chestnut street, if he did meet him there, his receiving two loaded shells from Everitt as testified to by Everitt, if he did receive

them, he having thrown his away according to Everitt's testimony; his failure to make an outcry and have an arrest made for the shooting of Miller immediately upon his finding out that Miller had been shot and murdered, and if you believe Everitt, his going back into the pool room in company with Everitt, shortly after the shooting and participating in the robbing of Miller while he lay on the floor in a helpless and dying condition, as testified to by Everitt; his running out with Everitt to the river front and then to the Reading station where they both took the train to Shamokin, his sleeping with Everitt that night in his own room at Shamokin, the hiding of the booty or money in his own room; his possession of it the next morning after Everitt had left; his division of the money and his handing to Everitt on the street on Sunday morning what Nye considered his share of the bills; his telling Everitt to come around and get his share of the nickles, &c., his attempt to escape from the officer after his arrest; his keeping the secret of the robbery and murder within his own breast until after his arrest and not then until placed on the witness stand in his own behalf; his conversation with the little boy from Glen Mills, 'that he was going to rob someone in Sunbury and if he heard of a murder that he would know who done it'; his conversation with the two girls from Shamokin in the lockup when he said that he did not do it but that there were five others, and that he would not squeal if he had to stretch the rope; his exhibition of money in the candy kitchen and the display of nickles there; his numerous purchases made on Monday and the payment of a bill of $3.75 in nickles, having handed the merchant an envelope supposed to contain $5.00 in nickles but was two nickles short; his request from his boarding mistress to wait for his board and his payment of the same to her the very Sunday morning; his explanation of his revolver and its condition when found on him; and all the evidence in the case, all these facts, we say to you, you must take into consideration in deter-

mining whether Nye's testimony is true that he took no part in robbing and murdering Miller and was absolutely ignorant of the same at the time it was done." (12)

"Starting with the legal presumption of innocence in favor of the prisoner until the proof fairly establishes his guilt, the first question to be decided is whether he is guilty of murder; second whether he is guilty of murder in the first or second degree according to the definition we have previously explained to you, and third, whether if not guilty of murder, whether he is guilty of voluntary manslaughter, which is defined to be the unlawful killing of another without malice." (13)

"An appeal to you by defendant's counsel to spare this defendant's life on the ground that the jury in the Everitt case allowed the real murderer to escape the death penalty, is an appeal which counsel should not have made to you. It is an attempt, on his part, to steer you away from the evidence in the case and to influence you by matters wholly outside of the case and which should have no weight in influencing your judgment.

"We want to emphasize this point, and we instruct you that it is the law that you must decide this case on the evidence before you. And if you allow your deliberate judgment to be shaken by the fact as alleged by defendant's counsel, that the real murderer has escaped just punishment by the alleged mistake of a jury in another case, you will be violating your oaths as jurymen. You have been sworn to try this case on the evidence produced before you in this case, not upon the verdict in another trial, whether you believe that verdict just or not. You must do your duty under your oaths, whether other jurymen did theirs or not. That is no concern of yours." (14)

Verdict of guilty of murder in the first degree, upon which judgment of sentence was passed.

*Errors assigned* were excerpts from the judge's charge above quoted (9-14). Other assignments are sufficiently shown in the opinion of the Supreme Court.

*C. R. Savidge* and *Voris Auten,* with them *H. W. Savidge,* for appellant.

*Frank H. Strouss,* District Attorney, and *L. S. Walter,* with them *Thos. N. Burke,* Asst. Dist. Attorney, for appellee.

OPINION BY MR. JUSTICE POTTER, April 21, 1913:

Frederick Nye was charged with the crime of murder of the first degree, and in the Court of Oyer and Terminer of Northumberland County he was convicted thereof, and sentenced accordingly. He has appealed, and in the first assignment of error his counsel contend that the court below erred in overruling defendant's motion to quash the array of jurors, for the reason that they had not been summoned in accordance with Section 125 of the Act of April 14, 1834, P. L. 333, which requires the sheriff to summon jurors "by delivery to each of the said persons a separate ticket in the customary form, specifying the duty enjoined, or by leaving such ticket at their usual place of abode." In the present case it appears that the sheriff sent the notices to the jurors by mail. The testimony taken in support of the motion to quash shows that all the jurors summoned, except six, acknowledged receipt of the notices, and were present in court when the case was called for trial. Fifty-five jurors were in attendance, in response to the notices which they received. It matters little how the notice was served. In Com. v. Zillafrow, 207 Pa. 274, Mr. Chief Justice MITCHELL, referring to the provisions of the Act of 1834, regulating the drawing and summoning of jurors, said (p. 277): "The statutory provisions alleged to have been disregarded, though not followed literally, were not contravened as to spirit or intent. The provisions themselves are directory in character. They do not prescribe or bear upon the substance of any duty, but merely upon the manner of its performance, and do not differ in this respect from other provisions

of the same or analogous acts which have already been held to be directory only." In the argument of counsel for appellant, it is suggested that as six jurors failed to respond to the notices sent by the sheriff, and as there was no proof that they received the notices, appellant's rights were prejudiced. In Foust v. Commonwealth, 33 Pa. 338, it was held, as set forth in the syllabus, "It is no cause of challenge to the array, in the Oyer and Terminer, that but forty-eight jurors were summoned, one of whom was not qualified to serve." Mr. Justice WOODWARD said (p. 343) : "The circumstances that disqualify or excuse citizens from serving as jurors are so numerous, that it seldom, perhaps never, happens, that a panel is drawn without some incompetent name upon it. The non-attendance of such a juror is of no consequence, especially after verdict." In Rolland v. Commonwealth, 82 Pa. 306, Mr. Justice PAXSON, after referring to several sections of the Act of 1834, including the one here in question, said (p. 321) : "Taken together we do not think that these provisions of the Act of 1834 require more than that forty-eight names shall be drawn from the wheel, and that in the absence of any knowledge at the time that any of the persons whose names are so drawn are dead or removed, the sheriff shall summon so many thereof as can be found within the county. This we believe has been the practice generally throughout the State, and is entirely consistent with Foust v. Commonwealth, 33 Pa. 338. In that case forty-eight persons were summoned, but one of them was disqualified by reason of not residing within the county and being an alien. He was therefore not a juror and of no more service than the persons returned by the sheriff in this case as 'not found' and 'dead.' It is not a right of a defendant to have forty-eight jurors in actual attendance in the Oyer and Terminer. If all are summoned and attend, the court may excuse some of them, and this cannot be assigned for error: Jewell v. Com., 22 Pa. 94. Nor can a defendant be prejudiced thereby. It does not

impair his right of challenge. He has a right to his peremptory challenges and as many more as he can show cause for, while special venires are provided by law in case the panel should be exhausted." In Com. v. Payne, 205 Pa. 101, Mr. Justice MITCHELL said (p. 102): "The statute prescribes a minimum panel of forty-eight and such a panel should be regularly drawn in accordance with law. But it is not required that the whole panel shall appear in court at the call of the case for trial. Such a requirement would frequently be impracticable. Some of the persons drawn may be dead or removed from the county, and their absence is not ground for challenge to the array. It is not a right of a prisoner to have forty-eight jurors in actual attendance." And further on (p. 103) he says: "There is no right in a prisoner to have any particular man or men on the jury, or any particular set of men from whom to select. His right is only to have the proper number of jurors, 'good men and true,' as the common law phrase was, to sit upon his case. The venire for talesmen always implies that less than a full panel are required: Williams v. Com., 91 Pa. 493." The appellant suffered no wrong in this respect.

In the second assignment of error complaint is made of the refusal of the trial judge to direct the examination of jurors to "be proceeded with as was the custom for many years in the courts of Northumberland County," and in directing the examination to be conducted in accordance with the Act of 1901. The assignment is defective in that it does not set forth the request made by counsel for defendant, or the ruling of the trial judge thereon; nor does it show any exception; nor does it indicate what the custom was to which reference was made. The Act of March 6, 1901, P. L. 16, under which the examination was directed to proceed, is general in its terms applying to "the trial in any court of any indictment charging a felony or misdemeanor." It supersedes any custom inconsistent therewith in any particu-

lar court, and there was no error in so holding. Furthermore, it is not even suggested that appellant was prejudiced in any way by the method of examination and challenge directed by the trial judge. In Com. v. Conroy, 207 Pa. 212, a similar method was held to be within the meaning of the Act of 1901. Mr. Justice DEAN said (p. 216): "Equality was preserved by the practice of the court below; the defendant was deprived of no substantial right; he practically obtained a jury of his own selection from the panel. There was no error, not even a technical one."

In the third assignment the court is charged with error in not quashing the array of jurors on the first special venire because the sheriff and his deputies had asked jurors before summoning them whether they were opposed to capital punishment, and whether they had formed or expressed an opinion as to the guilt or innocence of the defendant. This assignment is also defective in that it shows no motion to quash the array; no ruling of the court thereon, and no exception taken. It appears from the record that the trial judge gave counsel for defendant an opportunity to make such a motion, and they declined to do so. They cannot now be permitted to take any advantage of their action.

The fourth and fifth assignments of error are to the overruling of defendant's challenge for cause to two jurors. These assignments are also defective in that they do not quote the bill of exceptions or set forth the grounds of challenge in so far as they appear from the ruling of the judge. Reference to the record as printed in the appendix shows however that the challenges were based upon the fact that the sheriff had interrogated them as to their having conscientious scruples as to capital punishment, and as to their opinions as to the guilt or innocence of defendant. The record shows that the trial judge asked counsel for defendants whether they desired to make any motion to discharge the entire panel upon that ground, stating that if such a motion were

made he would sustain it. Counsel declined to make the motion. The trial judge then overruled the challenges to the particular jurors. Under the decision in Com. v. Cleary, 148 Pa. 26 (40) it would have been the duty of the court to discharge the entire panel, if it appeared that defendant was prejudiced by the "officious and unauthorized acts of the sheriff." But the fact that counsel for defendant declined to make a motion to discharge the panel on that account, when notified to do so by the trial judge, indicates that they did not regard the action as having been prejudicial to the defendant. The two jurors in question were regularly summoned and qualified by examination before the court, and their acceptance was not in any way prejudicial to defendant. The irregularity in the conduct of the sheriff in summoning the entire panel having been waived, as not having resulted in prejudice, that action cannot avail to enable defendant to exclude individual jurors otherwise acceptable.

In the sixth assignment complaint is made of the refusal of the trial judge to quash the array of jurors brought in on the second special venire. The assignment does not show the motion to quash, and does not quote the bill of exceptions. From the body of the record we find that the sheriff was directed to summon twelve jurors "from the body of the county." Seven of the twelve were from Sunbury, where the murdered man resided, and where the crime under investigation was committed, and counsel for defendant argue that summoning jurors from this locality was prejudicial to defendant. The suggestion is far fetched. The notes of trial show that when this venire went out, but one more juror was needed. Only four of the twelve summoned, were called, and the fourth, who was accepted by defendant, and completed the panel of the jury, was a resident of Dalmatia, and not of Sunbury. The court below was fully justified in holding that the sheriff had properly

discharged his duty in summoning jurors under this venire.

In the seventh and eighth assignments it is alleged that the court below erred in overruling challenges for cause, to two jurors, Deppen and Gillum. When examined, both jurors testified that they had read about the murder and had formed opinions as to the guilt or innocence of defendant. Deppen said that, if accepted as a juror, he would lay aside his opinion and try the case on the evidence unaffected by that opinion or any prior impression; his opinion would have no influence whatever in arriving at a verdict. Gillum said that while he had an opinion that it would take strong evidence to overcome, it would not be taken into account in making up the verdict, but he would be guided absolutely according to the evidence. These answers brought the situation directly within the rule laid down in Com. v. Eagan, 190 Pa. 10, where Mr. Justice MITCHELL said (p. 19) : "The established test is whether or not the juror can throw aside his impression or opinion and render an impartial verdict on the evidence alone. That question the juror alone can answer, and the weight of his answer is not to be determined exclusively by his words as they appear in print in the record, but by his words, manner and bearing, as to which a fair measure of discretion must be allowed to the court below which had the juror before it. It is argued that the present case fails to meet the test because the juror spoke of his opinion as 'fixed' and because his answer was not positive, but only 'I think I could.' As to the 'fixed' character of the opinion, the objection is ruled by Curley v. Com., 84 Pa. 151, where it was held that, notwithstanding the juror's use of the word 'fixed' in regard to his opinion, he was competent if he declared he could disregard it and be governed only by the evidence. The juror's answer in the present case, 'I think I could,' may be construed as implying a doubt on his own part, but not necessarily so. As already said, the construction of the words is largely influenced by the

voice, manner and bearing of the speaker. If the latter
indicate confidence of his ability and intention to do
his duty, he has met the test, notwithstanding the ap-
parent hesitancy of his words. On this subject a rea-
sonable discretion must be allowed to the judge who has
the juror before him. In this instance the juror's an-
swers all through indicate a man of intelligence and
honest frankness, willing to do his duty and believing
himself able. Even if this were less clear than it is we
could not say the court was in error in taking that view."

The ninth, tenth, eleventh, and twelfth assignments
are all to portions of the charge. There is no merit in
any of them. Under the evidence there could be but one
conclusion, and that is, that the murder was committed
in the perpetration of a robbery. The question was
squarely submitted to the jury whether, while defendant
was perpetrating a robbery, or was aiding and assisting
therein, he had killed Miller.

In the thirteenth assignment complaint is made of the
use of the word "fairly" with respect to the establish-
ment of guilt which would overcome the legal presump-
tion of innocence. Taken by itself the use of the word
may be criticised. But the trial judge had already said
to the jury, "It is the duty of the Commonwealth to con-
vince you beyond a reasonable doubt of the guilt of this
defendant before you can convict him," and had in-
structed at length as to what constituted a reasonable
doubt. In the sentence immediately preceding the ex-
pression complained of, he also said: "The burden rests
upon the Commonwealth at all times to prove the guilt
of the defendant beyond a reasonable doubt." And sub-
sequently six points submitted by defendant, in which
instructions as to reasonable doubt were asked for, were
affirmed. We do not see any reasonable basis for the
suggestion that the jury could have been misled as to the
degree of proof required to overcome the presumption of
innocence.

In the fourteenth assignment the trial judge is alleged

to have erred in criticising a part of the argument of defendant's counsel, and in instructing the jury to disregard it. The record does not show what counsel said, but the judge states that it was an appeal to the jury to spare defendant's life on the ground that in the case of Everitt (defendant's alleged accomplice and the chief witness against him), the jury allowed the real murderer to escape the death penalty. This reference by counsel to something entirely outside of the evidence in this case was manifestly improper. The jury were at liberty to consider nothing but that which was in evidence in the case before them. The trial judge discharged a clear duty in warning the jury to disregard all reference to a matter not appearing by the evidence in the case they were trying.

In the fifteenth assignment it is alleged that the trial judge erred in his charge to the jury "by giving prominence to the testimony of the Commonwealth and by omitting, slighting and minimizing much of the testimony favorable to the defendant, and the charge as a whole was inadequate." We find nothing to support this allegation. Taking the charge as a whole, it impresses us as being fair and adequate, and in no way misleading to the jury. The opening paragraphs are open to criticism as being too rhetorical, and somewhat highly colored, but those features are not assigned as error; and the remainder of the charge is made up of sound statements of the law, and fair comments on the evidence. Counsel for defendant submitted sixteen points for instruction to the jury, and each of these points was affirmed, without any qualification whatever.

The assignments of error are all overruled. The judgment is affirmed, and the record is remitted for the purpose of execution.