Commonwealth *v.* Vincent A. Brennan, Appellant.

Argued October 23, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*James J. Powell,* and with him *William R. Lewis,* for appellant, cited: Commonwealth v. Dorst, 285 Pa. 232; Commonwealth v. Myma, 278 Pa. 505.

*J. Julius Levy,* Assistant District Attorney, and with him *John J. Owens,* District Attorney, for appellee.

OPINION BY LINN, J., November 20, 1930:

Appellant was convicted of conspiracy to set up gambling devices—slot machines—in violation of sections 56 etc., of the Act of March 31, 1860, P. L. 398 and supplements. The circumstances of the trial were unusual. In the course of proceedings, begun in November 1929, to determine ownership of seized gambling devices for the purpose of imposing on the owner or possessor ''the reasonable costs and charges to the seizing officer,'' pursuant to the statute, an investigation was made by the learned president judge of the court below. It resulted, inter alia, in a presentment by the grand jury in March 1930, on which the indictment in the record was based. The case, with others growing out of the same investigation, was set down for trial at a special term held in July.

On July 14, the case was called for trial before the learned president judge; it proceeded until July 17, 1930, when, (as appears by the brief of the Commonwealth) ''at about 12:00 o'clock noon the jury, failing to agree upon a verdict, was discharged by the trial judge.'' ''Thereupon,'' says the brief, ''the case was again called for trial by the special prosecutor.'' At this point a difficulty appeared which resulted in an erroneous ruling now to be considered. There were no jurors because they had all been discharged. In his opinion refusing a new trial, the learned president judge states that'' ...... the jurors. [other than the twelve whom he had discharged in consequence of the disagreement] had been discharged the day before when it was found that the only cases remaining undisposed of were those in personal charge of the special prosecutor who it was then supposed would

be engaged until late in the week in the Brennan trial.''
In the Commonwealth's brief it is said that ''the panel
was discharged by one of the trial judges for the
term.''

Against the objection of appellant's counsel, the
court then made the following order: ''Now, the 17th
day of July, 1930, the regular panel of jurors being ex-
hausted and the trial list undisposed of, talesmen are
found to be immediately required for service as jurors
in a case called for trial, to wit, that of the Common-
wealth v. Vincent A. Brennan et al., No. 143, April
Sessions, 1930; whereupon, in the exercise of authority
conferred upon us by the Act of the 16th of April, 1925,
P. L. 244, Stephen G. Fitch and George Morrow of
the City of Scranton, having no personal or pecuniary
or official interest in the case on trial are appointed
to summon forty (40) talesmen for jury service in
said case, all of whom must possess the qualifications
of jurors in and for this County; notice in writing
to be served on the persons to be summoned directing
them to appear at the Court House at 3:00 o'clock P.
M. this day for jury service. Such notice to be authen-
ticated by the signature of either one of the officials
so appointed. NEWCOMB, P. J., LEACH, J.''

Section 8 of the Act of April 16, 1925 P. L. 244,
(applying in 3rd class counties) provides: ''When
because of exhaustion of the regular panel of jurors
or other causes talesmen are immediately required for
service as jurors in a case called for trial, the trial
judge shall appoint one or two or three persons or
public officials as the court may determine ....... to
summon such manner [number?] of talesmen as the
court shall direct for jury service in the case on trial
......''

The Commonwealth's brief states that, pursuant to
the order, forty talesmen were brought in. From
them, a jury was selected, the case tried, and a verdict

of guilty rendered. Defendant objected in time and excepted.

By its terms, section 8 does not apply in the circumstances present when the order to summon talesmen was made. At that time there were no jurors in court because the entire panel had been discharged by the court of its own motion. There was not, therefore, within the meaning of the statute, either "exhaustion of the regular panel of jurors," or "other cause" requiring talesmen immediately; both phrases are used to cover contingencies in which talesmen de circumstantibus might be required according to well settled practice in trial by jury. Talesmen never were summoned when the entire panel had been discharged by the court of its own motion: the recognized meaning of the word 'talesmen' should be conclusive that section 8 does not apply where there are no jurors in court. A deficiency in the number of jurors available at the moment may result from various causes; generally it results from challenges, or because some jurors are excused for illness or like cause; see Jewell v. Com. 22 Pa. 94; Foust v. Com. 33 Pa. 338; Com. v. Payne, 205 Pa. 10; Com. v. Nye, 240 Pa. 359, 366. Section 7 of the act specifically authorizes any judge in charge of the trial list to excuse jurors.

The act of 1925 (amended 1929 P. L. 495), provides a comprehensive system of obtaining jurors in 3rd class counties. Section 5 requires that "the names, occupations, addresses and numbers of persons so drawn for jury service shall be typewritten upon a list, and the list shall be posted in the office of the prothonotary and clerk of the court at least twenty-five days before the first day of the week of court for which said jurors are chosen......" By consulting such list any party to litigation may inform himself prior to trial of the personnel of the panel from which the jurors for his suit may be drawn; this opportunity

to be informed is a valuable privilege (MOSCHZISKER: Trial by Jury, 2 Ed., sec. 120; Williams v. Com., 91 Pa. 493; Sinclair v. U. S., 279 U. S. 749) and it has been so long part of trial by jury in this state, that a party should not be deprived of it (assuming that the constitution permitted it) without more definite language than that used in the act.

Section 8 is not intended to provide a substitute for the jurors summoned pursuant to the preceding sections of the act; it merely specifies how deficiencies in the summoned jurors, such as reported cases show to have been long recognized as likely to occur, may be supplied. Section 10 provides that "when the array of jurors returned at any court shall be quashed by reason of any fault or irregularity in the selection of said array of jurors the court shall forthwith order another public drawing of jurors in the manner provided in this act to take the place of the jurors on the quashed array . . . . . . " This provision would seem also to negative the idea that where there are no jurors section 8 can be invoked.

In Williams v. Com. 91 Pa. 493, it appeared that, when Williams was called for trial, the "court sustained a challenge to the array of jurors made by the Commonwealth, and ordered a venire for twenty-four traverse jurors to be immediately summoned from the by-standers, or from the body of the county at large." From talesmen so summoned a jury was selected, and the case was tried against defendant's objection. The practice complained of was denounced as "unusual, if not unprecedented," and a new trial was awarded. The following quotation from the opinion is pertinent in the discussion of the question here raised by appellant. "By section 41 of the Criminal Procedure Act of 1860, it is enacted that 'all courts of criminal jurisdiction of this Commonwealth shall be and are hereby authorized and required, when occasion shall render

the same necessary, to order a tales de circumstantibus, either for the grand or petit jury.' This is a summary of much contained in the sections referred to above of the Act of 1834, including also section 145 of said act; but those sections are not repealed. By itself, the summary authorizes the calling of talesmen in no case when a venire has not been issued and returned with a panel of jurors present. A tales, by its very name, signifies a returning of so many as will make up the full complement; and, therefore, it is not granted where there is a total default, but only where the number is deficient: 1 Chit. Cr. L. 518. The first process for convening the jury is the venire facias, and thereupon then issue the habeas corpora and distringas juratores. If all the jury do not attend, or if so many be challenged and drawn that there do not remain a sufficient number to make a jury, there are at common law the writs of undecim, decem, or octo tales, according as the number was deficient, or by statute, the plaintiff may pray a tales de circumstantibus to prevent the delay of the decem tales: Bacon's Ab. tit. Juries, C. But if the whole of the jury be challenged off, then a new venire facias, and if none appear, then a distringas juratores shall issue and no tales: Ib. B. 2.

"By the statutes of this state, ample provision is made for the impartial selecting, summoning and returning of jurors in the courts of criminal jurisdiction. The court of quarter sessions has power, whenever the public business shall require it, to fix adjourned or special courts for trial of criminal cases; but if this were not so, and if a cause be continued [and?] it cannot be tried till the next term, there is no authority for calling a jury forthwith from bystanders, or the body of the county, to try a prisoner who has not challenged the array. Both letter and spirit of the statutes secure to persons charged with

crime a trial when a regular panel of jurors is in attendance, and only for deficiency in the number can talesmen be called. When the array is quashed there is no jury—that is no more a necessary occasion to order a tales de circumstantibus than it would be had none been drawn, summoned and returned. 'The next desideratum to the pure administration of justice is the giving satisfaction to the suitors, that their causes have been fairly and impartially decided.' [Munshower v. Patton, 10 S. & R. 334.] Were a man, holding an office, indicted for perjury in his official oath [which was the charge against Williams] in that he had falsely sworn that he had not paid money or other valuable thing to procure his election except as expressly authorized by law, brought to trial before a jury not selected, drawn and returned as the law provides, but selected and summoned by a sheriff, coroner, or two citizens on the day of trial, who returned a panel of which four-fifths were the names of his political opponents, including that of a defeated candidate for the same office, no matter if his guilt were clearly proved, he would naturally feel that his conviction was an outrage done in the name of justice. Such cases, and even worse, might arise if the law permitted the Commonwealth's counsel to challenge the array of jurors and, upon it being sustained, to forthwith compel the defendant to go on trial with a panel selected from the spectators and persons attending court.''

With that emphatic declaration in mind, this court cannot hold that a court may discharge the panel, and then, against objection treat the panel not as discharged but exhausted, and summon talesmen under section 8. The 4th, 5th, 6th and 7th assignments of error are sustained.

The second assignment complains that defendant's motion that his ''case now called for trial be tried

before some judge other than'' the learned president judge, was not granted. As we understand the printed record, such a motion was made and refused on July 14th immediately before the trial which resulted in the disagreement of the jury, and that the motion was repeated for the same reasons when the case was called for trial after the disagreement. In his opinion refusing a new trial, the learned trial judge stated: ''It is further said that the trial judge was disqualified. A lengthy paper was filed July 14th, verified by defendant's affidavit, in the nature of a challenge to the favor. The other judges were then each engaged in the trial of a case assigned in the usual way, so that this had fallen to the lot of the writer. Calling of a jury then in progress was interrupted by the motion. The offer to disqualify was somewhat belated. It had not occurred to counsel on the occasion of either one of his two motions to quash; on his eventual plea of nolo contendere in the case of Payton; on his application for continuance of this case in June; nor on various other incidental matters in preparation for trial, one of which was as recent as Saturday, July 12.''

. . . . . . . . . . .

''The challenge to the qualification of the trial judge was severely criticized at the hands of the Commonwealth as a mere pretext to avoid trial, to secure further delay, and as an act of bad faith in view of the grounds on which continuance had been accorded defendant in June. Without undertaking to express an opinion on the question of official good faith, the challenge was overruled by the concurrent action of all the judges as untimely, dilatory and not well founded.''

In the circumstances so stated, we dismiss the assignment. But, as a new trial must be granted, a word should be added on this subject. Two other

appeals (Com. v. Jermyn and Com. v. Friend) from convictions growing out of the investigation referred to in this case, have been heard at this term. There was ample cause for the investigation, and the inquiry was thorough, for it led to the indictment of ''over 150 persons as conspirators or slot-machine maintainers'' (Commonwealth's Brief filed in Com. v. Jermyn). But from the records so before us, all the judges of this court are of opinion that the participation of the learned president judge in the examination of witnesses and in the prosecution of the inquiry in chambers and at his residence created a condition which, if properly called to his attention by appropriate petition, should justify the trial of this case by one of his colleagues or by a judge called in under the statute.

The complaint that four members of the grand jury were dismissed does not merit discussion; nor, since a new trial must be granted, need we consider the assignment complaining that the learned trial judge unfairly stressed ''the closing argument of the district attorney in his charge to the jury.'' The assignments of error, not considered in this opinion, are dismissed because not included in the statement of questions involved.

Judgment reversed and a new trial awarded.