# Kittanning Insurance Company *versus* Adams et al.

1. The 90th section of the Act of April 14th, 1834, provides that "as soon as the selection of jurors and the depositing of their names shall be completed, the sheriff shall cause the same to be locked and secured by sealing-wax, and thereon the said sheriff and commissioners shall impress distinctly their respective seals." On a motion to quash the array because the box was sealed only with the individual seal of one of the commissioners:

    *Held*, That the absence of the proper seals, as directed by law, was cause for quashing the array.

2. The 83d section of the same Act further provides that every of the said wheels shall be provided with a sufficient lock and key; the wheel shall be in the custody of the commissioners of the respective county, (by Act of April 10th, 1867, jury commissioners were substituted for county commissioners) and the keys thereof in the custody of the sheriff of the same county":

[Ins. Co. *v*. Adams.]

*Held*, That the separation of the custody of the wheel and the key is a wise provision and a failure to comply with the same renders the array fatally defective; especially as the 84th section of this Act makes the neglect or refusal of the sheriff to take and keep the custody of the key a crime punishable with a heavy fine.

October 13th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Armstrong county*: Of October and November Term 1885, No. 98.

Feigned issue directed by the court upon the opening of a judgment confessed by John Adams, Frank Ambrose, Harvey Dougherty, Jonathan Snyder and E. A. Mortland in favor of the Kittanning Insurance Company for use of John Gilpin for $5,250, to determine, first, whether the note was taken as a renewal and payment of either of two similar notes which had been previously executed and entered up, and second, whether the note was obtained by fraud and was without consideration.

The case was tried twice and resulted each time in a verdict for the plaintiff. On January 21st, 1885, before the jury was called or sworn on the third trial plaintiff's counsel moved the court to quash the array of jurors for this special court for the following reasons: First. The jury commissioners for Armstrong County, James McCracken and J. J. Stewart, and James H. Chambers, the high sheriff of said county, or any two of them, before proceeding to select or draw the said array of jurors did not, on the 18th day of December, 1884, severally take the oath prescribed by law. In this: first, that the Sheriff, James H. Chambers, was not sworn at all; second, in that the two jury commissioners, Jas. McCracken and J. J. Stewart, only made and subscribed the following oath in words as follows:

Armstrong county, } ss.
   State of Penna., }

We, J. J. Stewart and Jas. McCracken, having first been duly sworn, do swear that we will well and faithfully do and perform all the duties pertaining to drawing the jurors for the special term 3d week of January, 1885, according to law.

Sworn and subscribed this }      JAMES McCRACKEN
18th Dec., 1884.            }      J. J. STEWART.
         A. H. STITT,
              Pro.

Second. That the jury wheel was not opened in the presence of the sheriff and jury commissioners, as required by law, but by the jury commissioners themselves, in the absence of the sheriff, and the said array of jurors was selected and drawn

by the said jury commissioners in the absence of the sheriff, contrary to law.

Third. That on the day the said jury was drawn the said sheriff was not the custodian of the key of the said jury wheel, but the same was in the hands of and in the custody of the jury commissioners and a third party hostile to the interests of the plaintiff and favorable to those of the defendants.

That the sheriff either unlocked the said wheel about one half a day before the drawing was made, and the same remained open until the drawing, or he delivered the key of said wheel either to one of the said jury commissioners or to some third party that length of time before the said drawing commenced.

Fourth. That out of the forty jurors composing the present array twelve are from the immediate neighborhood of the defendants.

Fifth. That the key of the jury wheel was never in the custody or possession of the sheriff. That the sheriff never took any oath with reference to the drawing of this jury, nor any general oath with reference to the filling of the wheel or drawing of jurors or custody of the key.

Armstrong County, ss.

Before me personally came Jas. H. McCain, Executor of J. Gilpin, deceased, plaintiff in the above entitled cause, who being duly sworn, says that the facts set forth in the foregoing reasons why the array of jurors should not be quashed are true so far as he has been able to obtain information of the facts, and they are true to the best of his information and belief. That great injustice might be done him if compelled to hazard a trial before the present jury drawn and selected as aforesaid, as he verily believes.

Sworn and subscribed  
January 20, 1885.  }                    J. H. McCain.  
    T. B. Faulk, J. P.

To sustain this motion, plaintiff called James H. Chambers, sheriff of Armstrong county, who testified as follows:

(Venire for this special term shown witness.)

Q. Do you know when this jury was drawn?

A. I only know it from information received. I was not present when they were drawn.

Q. Do you know whether or not or when was the jury wheel opened for the drawing of this jury?

A. I do not know.

Q. Was the wheel opened by you?

A. It was not.

Q. Is the key in your possession?

A. It is not.

Q. Did you have the key prior to this drawing?

A. I did not.

Q. Who had it?

A. The key has always been in the possession of the jury commissioners since I have been sheriff. I have never had it in my possession.

Q. Do you mean the key of the wheel where the jury are kept or the box in which the wheel is kept?

A. I mean I never had any key. The jury commissioners had been serving a year before I came into office, they had the charge and custody of the key at the time. One time I called their attention to the fact that the custody of the key belonged to me, and they said not, that it was not the practice in this county, and I never further insisted upon it and the key never came into my possession.

I had received the venire to draw this jury before the jury was drawn. I have no personal knowledge of the drawing of this jury.

I did not unlock the jury wheel on the 18th day of December last. I was not present.

The court, WILLIAMS, P. J., of the fourth judicial district, overruled the motion to quash, holding on the points raised: 1st. That the clerk appointed to write down the names of the persons drawn from the wheel is not required to be sworn; however, it is proper that he should be, and that failure to administer the oath to him before he entered upon the relation to act as scribe for the jury commissioners does not invalidate the drawing.

That the oath of the jury commissioners, taken at the beginning of the year, is in accordance with the Act of Assembly, and qualifies them to fill the wheel and draw jurors during the year, and this repetition at each term of court is not required by any Act of Assembly.

That the sheriff having nothing whatever to do with the filling of the wheel, is not required to be sworn except as when he participates in the drawing, and, as in this case, he did not in any manner participate, his failure to make affidavit is immaterial.

That the custody of the box appears, by the evidence, to be in the jury commissioners, who deposited it in a locked chest in the vault of the commissioners' office; and the box was therefore in proper custody.

That under the evidence and presumption of law, the seals upon the box were those of the sheriff and jury commissioners, and that at the time the box was opened for the drawing of the jury they were intact and unbroken, affording evidence that the wheel had not been tampered with.

[Ins. Co. v. Adams.[

That the key remained in the custody of one of the jury commissioners or of the jury commissioners and not in that of the sheriff is an irregularity, which, under the holding that we have already put upon record, ought not to be held fatal to the array. The presence of the seals unbroken upon the box at the time it was taken from the vault of the commissioners affording evidence that there had been in fact no interference whatever with the wheel or its contents.

Since the Act of '67, authorizing the sheriff and the jury commissioners, or a majority of them, to open the box and draw a jury from the wheel, we are of opinion that the fact that the sheriff was not present when the box was opened and the drawing took place, is not fatal to the drawing. (First assignment of error.)

The court left the question of fraud to the jury.

Verdict for the defendants and judgment thereon. Plaintiff then took this writ, assigning for error, *inter alia*, the refusal of the court to quash the array.

*George A. Jenks* and *M. F. Leason* (*J. M. Hunter* with them), for plaintiff in error.—Unless the requirements of the law are observed as to the custody of the jury wheel key, sealing of the jury wheel and drawing of the jury, the law presumes fraud, *juris et de jure*, and parol evidence is not admissible to rebut this presumption. The evidence showed beyond dispute the following: (1) That the sheriff never had the key of the wheel. (2) That he was not present at the drawing of the jury, nor did he open the wheel. (3) That the key was in the possession and under the control of one of the jury commissioners. (4) That before drawing the jury, the jury commissioners were not severally sworn. All this is in plain disregard of the statutory requirements: Acts of April 14th, 1834; April 10th, 1867 (P. L. 62); March 18th, 1874; and hence the array should have been quashed: Brown *v.* Com'th., 23 P. F. S., 330; Thompson *v.* White, 4 S. & R., 137; Proper *v.* Luce, 3 P. & W., 65; Hoffman *v.* Hoffman, 6 Casey, 420.

*Edward S. Golden, Charles McCandless* and *David Barclay*, for defendants in error.—It may be observed that the Act of 1834, the Act of 1867 and the Act of 1874, furnish a system of selecting and drawing jurors. The first by the sheriff and county commissioners, and the latter by the judge of the court and jury commissioners. Nowhere, in any Act of Assembly, is it in language declared that the failure of the officials to observe the letter of the law, shall invalidate or render void, the drawing of the jury. The officials are visited with a pen-

alty for their neglect; which is in the nature of a specific remedy, and, according to the maxim, *expressio unius est exclusio alterius*, excludes all other remedies.

The fact that there was no fraud, or suspicion of fraud, in drawing the jury for the special court, appears conclusively from the evidence. And the learned judge below, after careful consideration of all the evidence, has so found affirmatively. And that finding will not be disturbed by this court: Campbell *v.* Com'th 3 Norris, 187.

Mr. JUSTICE GREEN delivered the opinion of the court, November 9th, 1885.

In the case of Brown *v.* Commonwealth, 23 P. F. S., 321, we held that the array of jurors should have been quashed because the jury wheel was sealed with but one seal. The law (Act of 14th April, 1834, § 90, Purd. Dig., 959 pl. 13,) provides that, " as soon as the selection of jurors and the depositing of their names in the wheel as aforesaid shall be completed, the sheriff shall cause the same to be locked and secured by sealing-wax and thereon the said sheriff and commissioners shall impress distinctly their respective seals." In delivering the opinion of the court READ, C. J., said, " It is clear that only one seal was used, and that it (the jury wheel), was not sealed with the respective seals of the two jury commissioners and sheriff, making three seals. Of course this was error and the array so challenged should have been set aside and the indictment for the murder of Kraemer should have been quashed." On the hearing of the motion to quash, it was found that after the wheel was filled it was locked and placed in a box which was also locked with a padlock, tape drawn across the lid of the box, tied and sealed; there was but one seal put on the box, that was the private seal of one of the jury commissioners; both jury commissioners were present when the box was locked and sealed; the sheriff was not present; the key was obtained from him and returned to him; the box had always been kept in that way, and had always been found by the jury commissioners intact and where they left it. There was no proof that the box or wheel had been opened or in any manner tampered with. Yet we held that the absence of the proper seals directed by the law was cause for quashing the array. In the present case it appears that another provision of the same law, quite as important and quite as imperative in its terms, was continuously violated down to and including the drawing of this jury. It is the provision in regard to the custody of the key of the jury wheel. The 83d section of the same Act of 1834, Purd. Dig., 959 pl. 10, provides that, " Every of the said wheels shall

be provided with a sufficient lock and key; the wheel shall remain and be in the custody of the commissioners of the respective county, and the key thereof in the custody of the sheriff of the same county." The Act of 1867, Purd. Dig., 958 pl. 2, which substitutes jury commissioners for county commissioners, repeats the injunction as to the custody of the key. It can readily be understood that the separation of the custody of the key of the wheel from the custody of the wheel itself, is an additional precaution against tampering with the wheel, and it is a wise provision. If the jury commissioners have the exclusive custody of the wheel, and the sheriff has the exclusive custody of the key, there can be no tampering with the wheel except by collusion with both the commissioners and the sheriff, whereas if the commissioners or the sheriff have the custody of both, only one act of collusion will be necessary. It is sufficient to know that the law positively prohibits such united custody. But it does more. The 84th section of the Act of 1834, Purd. Dig., 959, pl. 11, provides, "that if the commissioners neglect or refuse to take charge of such wheel or wheels or if the sheriff neglect or refuse to take charge of the key belonging to such wheel or wheels, the sheriff or commissioners so offending, and every of them shall on conviction thereof in the court of quarter sessions of the respective county forfeit and pay a fine not less than one hundred dollars, nor more than one thousand dollars, at the discretion of the court." It will be seen that either the neglect or refusal of the sheriff to take and keep the custody of the key of the jury wheel, is a crime punishable with a heavy fine. If now we say that it makes no difference whether the sheriff performs this duty or not unless it is proved affirmatively that the wheel has been invaded and the ballots changed, we practically condone the offence, and certainly disregard the positive provisions of the law. We can not do this. The sheriff in this case testified that he had never had the key of the jury wheel in his possession, that he had once called the attention of the jury commissioners to the subject, and told them the custody of the key belonged to him, but they said it did not and he never again demanded it. In these circumstances we feel obliged to say that the motion to quash the array of jurors ought to have prevailed and that it was error in the learned court below to overrule it. We reverse the judgment on the first assignment and for the reason stated. We do not sustain any of the other assignments. The question involved was one of fraud in fact and Mr. Gilpin's participation in it or knowledge of it, and we do not think the latitude of testimony allowed in such cases has been transcended. We do not discuss the evidence because the case

[Dunham *v.* Haggerty.]

must be tried again, and we do not think it proper to give an intimation of opinion upon it further than to say that we think there was evidence enough to carry the case to the jury. We regard the charge of the learned court below as quite correct upon all this branch of the case.

Judgment reversed and new *venire* awarded.