# In the Matter of Drawing of Panels of Grand and Petit Jurors.

*Criminal procedure—Challenges to the array—Time of making—Jurisdiction of court—Jury wheel—Method of filling and keeping of jury wheels—Jury commissioners—Sheriff—Duties of—Acts of April 10, 1867, P. L. 62, and April 14, 1834, P. L. 333.*

On a petition by a district attorney challenging the array of grand and petit jurors on the ground that the jury wheel had been improperly filled and kept, the court, after a hearing, dismissed the petition on its merits. At the time the motion was made no jurors were in attendance, no indictment had been returned by the grand jury, nor had any defendant been called upon to enter a plea to any criminal charge.

Under such circumstances the motion was premature and the court was without jurisdiction to make any order on the merits.

While a motion to quash the array may be made, either by the Commonwealth or the defendant, it must be made after the trial is called on and before the defendant has entered his plea to the indictment or made an agreement to try on the merits.

By the Act of April 10, 1867, P. L. 62, the jury commissioners, president judge or additional law judge, or a majority of them, are charged with the duty of filling the jury wheel. The duty enjoined upon the president judge, or additional law judge, cannot be delegated to a secretary.

The sheriff is without authority to participate in the filling of the jury wheel.

The Act of 1867 requires that the jury wheel shall be kept in the custody of the jury commissioners and the keys thereof in the custody of the sheriff. This requirement is not met by keeping the wheel in a locker in the sheriff's office, to which the sheriff has the key, as well as the key to the jury wheel.

Argued March 15, 1927.   Appeal No. 168, April T., 1927, by M. Levant Davis, District Attorney, from order of Court of Q. S. Erie County, in the Matter of the proceedings for the drawing of Grand Jurors and Traverse Jurors for the February Sessions, 1927. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Appeal quashed.

Petition to quash the array of grand and petit jurors. Before ROSSITER, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition.   M. Levant Davis, District Attorney, appealed.

*Error assigned* was the refusal of the court to quash the array.

*M. Levant Davis,* District Attorney, for appellant.

No appearance and no printed brief for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1927:

The District Attorney of Erie County, acting in his official capacity, has appealed from the action of the Court of Quarter Sessions of that county refusing to grant a petition presented by him on January 3, 1927, praying that the array of jurors summoned for service at the February Sessions, 1927, of the criminal courts of Erie County be quashed.   The petition, as amended, avers in substance, as grounds for quashing the array of grand and petit jurors, that the jury wheel, in which twelve hundred names of qualified electors had been placed in the Fall of 1926 to serve as jurors for the year 1927, had not been regularly filled in that certain persons who had no legal authority so to do participated in filling it; that the required oaths were not taken prior to the filling of the wheel and prior to the drawing of names of jurors therefrom; that both the wheel and the key thereto remained continuously in the custody of the sheriff of Erie County from the time the wheel was filled; and that no certified list of the name, occupation and residence of every person placed in the jury wheel had been filed of record in the office of the prothonotary of the Court of Common Pleas.   The docket entries indicate that a rule to show cause was granted, but the record does not disclose to whom it

was directed or upon whom it was served. The court below however took the testimony of witnesses called by the district attorney in support of the averments contained in his petition, and after consideration thereof the learned judges of the court below joined in an opinion under date of January 26, 1927, denying the prayer of the petition.

The petition is in effect a motion by the Commonwealth to quash the array of grand and petit jurors. As it is a novel proceeding in this state the first question naturally arising is whether the court below had jurisdiction to entertain, and make a ruling upon, this motion under the circumstances existing at the time it was made. Panels of grand and petit jurors had been drawn and summoned for service at the ensuing February Sessions, 1927, of the criminal courts, and the district attorney, after setting forth in his petition that he was "representing the Commonwealth in a large number of cases to be brought before the February grand jury, and for trial at said February Term before the traverse jury," challenged "the array of grand jurors and the array of the traverse jurors for said February Sessions, 1927," upon the grounds stated. It is therefore clear that when the motion was made none of the grand or petit jurors whose names had been drawn for service at the February Term was present to render that service; nor was any case on trial or called for trial in the criminal courts of the county; nor is it averred that any case had been set down for trial at any particular time. The motion was not made by any party litigant in any criminal proceeding then actually pending for trial; no indictment had been returned by the grand jury, nor had any defendant been called upon to enter a plea to any criminal charge. The motion was made by the Commonwealth's officer in advance of the beginning of the term and upon its face shows that it was based upon his belief that all

the requirements of law had not been observed in filling the jury wheel and in drawing the names of jurors therefrom.  We have not been referred to any statutory authority for the making, either by the Commonwealth or a defendant, of a motion of this kind under such circumstances and we therefore turn to the common law for the purpose of ascertaining whether the Commonwealth has the right to challenge the array and, if so, when that right may be exercised.  The jurisdiction of the court to make the order appealed from depends upon the right of the Commonwealth to invoke the exercise of the court's powers.  We have no doubt that at common law the king as well as a defendant had the right to challenge for cause, at the proper time, either the array or individual jurors, but we are not persuaded that a challenge of either kind may be made in advance of the actual calling on of a trial.

"Challenges for cause upon indictments are of two kinds, either for the king, or for the prisoner, and each of these are again of two kinds, either to the array or to the poll.  The king may challenge the array or the poll, but then he must show cause of challenge, but he need not show the cause upon his challenge to the poll, till the whole panel be perused:" Hale's Pleas of the Crown, Volume II, Chap. 36, p. 271.

"When the trial is called on, the jurors are to be sworn, as they appear, to the number of twelve, unless they are challenged by the party.  Challenges may here be made, either on the part of the king, or on that of the prisoner, and either to the whole array, or to the separate polls, for the very same reasons that they may be made in civil causes:" Sharswood's Blackstone's Commentaries, Vol. II, Book IV, p. 352.  Hale thus speaks of challenges for cause "upon indictments," and Blackstone of challenges "when the trial is called on."  It seems clear from the following authorities that at common law no challenge to the array or to the

panel (meaning thereby the whole number summoned and not merely those selected by the clerk by lot for a particular case) could be made until the full jury was present: 1 Chitty Criminal Law (4th Am. Ed.) 544; MacDonald v. State, 172 Ind. 393; and St. Louis, etc., R. Co. v. Wheelis, 72 Ill. 538. A number of reasons for this rule might be suggested, among them being the obvious one that a challenge to the array should be in writing so that it may be put upon the record and the other party may plead or demur to it. (See note to Sec. 684, Wharton's Criminal Pleading and Practice, 8th Ed., Chap. 12, p. 454.) Here the proceeding was entirely ex parte and there was no one to traverse or demur to the facts averred by the district attorney; nor have we any appellee upon this appeal. Manifestly in a challenge of this kind there should be an issue and joinder and a judgment on the issue before there is anything to appeal from.

"When the action of the court, as in cases of challenges to the array and peremptory challenges, is placed on record, and there is a regular issue and joinder, and judgment on this issue, then error lies to this at common law:" Wharton's Criminal Pleading and Practice, 8th Ed., Chap, 12, Sec. 695, p. 459. "It seems that there must be a regular judgment on an issue joined in law or in fact to found the writ of error on:" Wharton's Criminal Pleading and Practice, 8th Ed., Chap. 17, Sec. 777, p. 515. We accordingly conclude that at common law the king could not have challenged the array under circumstances similar to those prevailing when the Commonwealth sought to challenge it in this case. Whether under our statutory provisions regulating appeals in criminal cases the Commonwealth could appeal from a judgment overruling its challenge to the array when made at the proper time—except in nuisance, forcible entry and detainer, or forcible detainer cases, (Act of May 19, 1874, P. L. 219)—is a question

which is not now before us and upon which we express
no opinion.  As there was no authority under any
statute or at common law for the presentation of the
district attorney's petition at the time it was presented
the lower court was without jurisdiction to make the
order requested.  The Supreme Court of Idaho
reached similar conclusions in the case of Heitman v.
Morgan, 10 Idaho, 562.  This is the only case we have
found in which a prosecuting officer sought to quash
the array before any case had been called for trial.  Of
course the conclusion is based to some extent upon the
provisions of the Idaho statutes and the case is of in-
terest only in so far as the reasoning of the court with
respect to the time when such motions may be made is
concerned.  It appears from the report of that case
that the board of commissioners of the respective
counties of that state are authorized under its revised
statutes to select and certify the names of persons
qualified for jury service and that at their meeting in
January, 1904, they selected a list of one hundred and
fifty names and certified the same for jury service in the
county during that year. In November, 1904, on the first
day of the November Term of the district court for a cer-
tain county the prosecuting attorney thereof appeared
before the court and filed his affidavit and motion pray-
ing the court to quash the panel and discharge the
jurors summoned for that term upon the ground that
their names had been illegally selected in that they had
not been taken from the poll list as required by the
revised statutes.  The court without citing any person
to appear or making anyone a party to the proceeding
took the testimony of witnesses and after the hearing
made an order sustaining the motion, quashing the
panel and discharging the jurors.  Subsequently a
member of the bar of that court, who was also an
elector and taxpayer of the county, filed an applica-
tion in the Supreme Court praying that a writ of man-

date issue from that court to the judge who made the
order quashing the panel and discharging the jurors,
commanding him to rescind and vacate that order and
to resummon and reconvene the jury and proceed with
the trial of cases pending in the lower court.   In the
course of the opinion of the Supreme Court it is stated
that "It should be observed that no case was on trial
or called for trial when this motion [to quash] was
made, and no case had been set for trial, and that this
motion was not made by any party litigant nor in any
case pending before the court."   It was held that the
lower court was without jurisdiction and authority to
make the order quashing the array.   From the majority
opinion we quote the following: "Again, it is shown
that no litigant was complaining, and no person whose
rights or interests could be in any way affected by the
action of this jury complained.   The individual liti-
gant has every opportunity of testing the fairness and
legality of the jury when his case is called for trial,
and he is then provided with all the safeguards neces-
sary for his protection and attaining the ends of jus-
tice (sections 4379, 7818 and 7819), and this is avail-
able to the state as well as individuals.   We are clearly
of the opinion that the defendant judge was without
jurisdiction and authority to make the order com-
plained of at the time and in the manner and by the
proceeding in which such action was taken and order
made.   Jurisdiction to make such order cannot be ac-
quired in an ex parte manner."   We hold, therefore,
that while a motion to quash the array may be made
either by the Commonwealth or by a defendant it must
be made after "the trial is called on" and before the
defendant has entered his plea to the indictment or
made an agreement to try on the merits.   Under the
provisions of Sec. 53 of the Act of March 31, 1860, P.
L. 427, which is a transcript of the Act of February 21,
1814, 6 Sm. L. 111, as construed by the Supreme Court,

an agreement to try on the merits or a plea of guilty
or of the general issue is a waiver of such defects as
are alleged in this case: Commonwealth v. Freeman,
App., 166 Pa. 332, a case in which the wheel was not
properly sealed; and Commonwealth v. Eagan, 190 Pa.
10, where the wheel was not properly sealed and was
not kept in the proper custody.

In view of our conclusion that the court below was
without jurisdiction to make the order requested
we would be justified in quashing the appeal without
discussing the merits of the petition, but considering
the possible limitations on the right of the Common-
wealth to appeal if the court below should adhere to
the views expressed in its opinion and overrule a
motion to quash this array made by the Commonwealth
at the proper time, and considering the importance of
a strict compliance with our jury laws, we have con-
cluded to express our opinion upon the merits. For
this purpose it is not necessary to consider in detail all
the grounds upon which the district attorney's petition
was based. The evidence discloses irregularities in the
filling and in the custody of this wheel which in our
opinion are so serious and such plain violations of law
that we cannot agree with the conclusion reached by
the court below. From the testimony and the facts as
found by that court we learn that the judges of Erie
County have a secretary, Edwin Gerbracht; that from
time to time during the year 1926, the judges gave him
the names of qualified electors whom they considered
suitable for jury duty; that he made a note of these
names and retained them in his possession until the
time for the filling of the wheel in the Fall of 1926.
This list of names was submitted by him to the presi-
dent judge prior to the filling of the wheel. The per-
sons present at the filling of the wheel were the two
jury commissioners, Dennis Shire and Leo Monahan;
their clerk, Charles H. Schloss; the sheriff of the

county, Thomas G. Sterrett; and the said Edwin Gerbracht, secretary to the judges. Both the sheriff and the secretary to the judges participated in the filling of the wheel. The judges' secretary, in rotation with the jury commissioners, presented at least two hundred and twenty-five names from the above mentioned list and as he called off a name handed the slip containing it to the clerk of the jury commissioners, who typed the name and address on his list of all the names deposited and handed the slip to the sheriff, who folded or rolled the slip and put it in the wheel. We do not believe that it was the legislative intent that the president judge or additional law judge of a county could delegate to a secretary the duty of meeting with the jury commissioners for the purpose of filling a jury wheel. The persons charged with that duty are the jury commissioners, president judge, or additional law judge, or a majority of them, themselves, and not their secretaries or agents. It is shown in this case that the names placed in the wheel at the instance of the judges of Erie County were selected by them and not by their secretary but as we construe the legislation the filling of a jury wheel is a matter requiring the exercise of judgment and discretion and not a merely ministerial or mechanical act. We are also of opinion that the participation of the sheriff in filling this wheel was irregular and without any authority in law. Prior to the Act of April 10, 1867, P. L. 62, the duty of filling, sealing and caring for the jury wheel and the duty of drawing panels of jurors therefrom was committed under the Act of April 14, 1834, P. L. 333, to the sheriff and county commissioners of the respective counties of the Commonwealth, subject to certain modifications with respect to the jury wheels of the County of Philadelphia. By Sec. 88 of the Act of 1834 it is provided that the sheriff and commissioners "shall provide a sufficient number of small slips or pieces of paper, upon

each of which, they shall write or cause to be written the name, surname and addition or occupation, and place of abode of one of the persons selected; they shall roll up or fold the said slips, so that the names shall not appear, without unfolding thereof, and thereupon they shall deposit the names of the persons so selected, in the appropriate wheel, as aforesaid."

The Act of 1867, supra, provides for the election of jury commissioners and transfers to them and the president or additional law judge of the county, or a majority of them, the duties theretofore imposed upon the county commissioners and sheriff in connection with the filling of the wheel. By its second section it is enacted that "It shall be the duty of said jury commissioners, president judge, or additional law judge, of the respective district, or a majority of them, to meet at the seat of justice of the respective counties, at least thirty days before the first term of the Court of Common Pleas, in every year, and thereupon proceed, with due diligence, to select, alternately, from the whole qualified electors of the respective county, at large,........ [the number of jurors designated by the Court of Common Pleas] to serve as jurors, in the several courts of such county during that year; and the said jury commissioners, president judge, or additional law judge, or a majority of them, shall, in the mode and manner now directed by law, [Act of 1834] place the names of persons, so selected, in the proper jury wheel, and the said jury wheel locked, as now required by law, [Act of 1834] shall remain in the custody of the said jury commissioners, and the keys thereof in the custody of the sheriff of said county." The preparation of the slips containing the names for the jury wheel is to be in the mode and manner directed by the above quoted section of the Act of 1834, but the placing of the names in the wheel is to be done by "the said jury commissioners, president judge, or additional law judge, or a majority

of them." By the fourth section of the Act of 1867 it is expressly provided, inter alia, that so much of any act or acts as makes it the duty of the sheriff and county commissioners to select jurors is repealed. The sheriff of Erie County therefore had no authority to participate in any way in the filling of the wheel; his duties began after it was filled. Under the second section of the Act of 1867 above quoted the wheel ".'locked, as now required by law, shall remain in the custody of the said jury commissioners, and the keys thereof in the custody of the sheriff of said county." The manner of locking and sealing the wheel is specified in the Act of 1834, supra, which provides in Sec. 90 thereof that "The sheriff shall cause the same to be locked and secured by sealing-wax, and thereon the said sheriff and commissioners shall impress distinctly their respective seals." By the Act of 1867, supra, these duties are transferred from the county commissioners and sheriff to the jury commissioners and sheriff and they, or any two of them, are also charged with the duty of drawing panels of jurors from the wheel. With respect to the possession of the wheel the testimony shows conclusively that it has not been in the custody of the jury commissioners as required under severe penalties, but was kept in a locker in the sheriff's office, to which locker the sheriff had the key as well as the key to the jury wheel. This was a plain violation of the express provisions of the statute and the explanation offered by the jury commissioners that they did not have a convenient place to keep the wheel and the sheriff took charge of it for their accommodation cannot possibly excuse this dereliction on the part of the commissioners. The question involved under these provisions of law relative to the filling and custody of the jury wheel and the key thereto is not one of fraud or actual tampering with the wheel as the court below seems to have thought but rather a question of the proper execution

of the jury law. In Brown v. Commonwealth, 73 Pa. 321, but one seal had been used in sealing the wheel. At page 330 the Supreme Court said "Of course this was error, and the array so challenged should have been set aside and the indictment......should have been quashed......Strict attention should be paid to the execution of the jury law, so as to avoid these technical objections, which if not made at the time, are cured by the 53d Section of the Criminal Procedure Act of 31st March, 1860." In Kittanning Insurance Co. v. Adams, et al., 110 Pa. 553, the custody of the key as well as wheel remained with the jury commissioners and the Supreme Court, after stating that the provision for the separation of the custody of the key from that of the wheel is an additional precaution against tampering with the wheel and is therefore a wise provision, said "It is sufficient to know that the law positively prohibits such united custody," and after referring to the penalties provided by the Act of 1834 for the neglect or refusal of the commissioners to take charge of the wheel and of the sheriff to take charge of the key, added "It will be seen that either the neglect or refusal of the sheriff to take and keep the custody of the key of the jury wheel, is a crime punishable with a heavy fine. If now we say that it makes no difference whether the sheriff performs this duty or not, unless it is proved affirmatively that the wheel has been invaded and the ballots changed, we practically condone the offense, and certainly disregard the positive provisions of the law. We cannot do this." It is at least doubtful under the testimony whether the statutory provisions of the third section of the Act of 1867, requiring the jury commissioners and sheriff, severally, to take the oath or affirmation prescribed by law before they shall proceed to draw jurors, have been complied with in this case but as the testimony shows beyond question the fatal

irregularities to which we have referred it is unnecessary to prolong the discussion.

If the order of the court below denying the prayer of the petition, after hearing and argument, were properly before us for review it would be reversed, but as that court was without jurisdiction to entertain the petition at the time it was presented and to make any order upon the merits the appeal will be quashed.

Appeal quashed at the costs of the Commonwealth.