### Commonwealth v. Webster

*Joseph Nelson*, District Attorney, and *Robert Banks*, Assistant District Attorney, for Commonwealth.

*Michael Wheery*, for defendant.

ACKER, J., July 30, 1971.—The matter before the court arises from a rule to show cause why the entire grand jury panel selected for the September term of 1971 should not be dismissed. An answer was filed to this rule by the Commonwealth, the issue therefore joined and testimony taken. From the receipt of evidence and stipulations, this court makes the following findings of fact.

## FINDINGS OF FACT

1. That the jury commissioners were ordered by John Q. Stranahan, President Judge of this court, toward the conclusion of the year of 1970, to fill the jury wheel with a total of 1,250 names.

2. That a meeting was held with the jury commissioners by Judge Stranahan in which the Court Administrator, John Cutler, participated. It was there agreed that every fiftieth person from the most recent voter registration list of the county be placed in the jury wheel comprising the 1,970 jurors.

3. That the jury commissioners met with their secretary for this purpose and commenced the preparation of the list starting with the boroughs and townships in alphabetical order and taking every fiftieth elector therefrom. This list is Exhibit #1.

4. When the jury commissioners arrived at a total

of 1,141 jurors it was discovered that every fiftieth name from the registered voter list of Mercer County had been consumed and it was necessary, in order to comply with the court order, to have an additional 109 names added.

5. That the jury commissioners and president judge met for this purpose and added the additional 109 names in an equal one-third, one-third, one-third basis.

6. That no evidence was produced as to the source of the names supplied by Judge Stranahan or Mrs. Julia Welch, one of the jury commissioners, but that Commissioner Donald Hamilton had a list of names which had been compiled from people who had requested of him in the past to serve upon jury duty. This list was not political in nature; that he did not know the political affiliations of all the persons upon the list.

7. That after assembling the entire list which was typed as the names were given by the secretary, the President Judge and the two jury commissioners met; that it consumed approximately 10 days to two weeks by the two jury commissioners and the secretary to compile petitioner's exhibit no. 1 for every name as taken off of the voter registration list was checked to determine that the person was still a registered voter and residing at the address listed as appeared in the records of the Registration Office in the Mercer County Courthouse.

8. That after the entire list was compiled, the President Judge and the two jury commissioners met with two secretaries of the jury commissioners. Starting with the President Judge, followed by Commissioner Welch and Commissioner Hamilton, the names alternately were called off from petitioner's

exhibit no. 1, entered into the jury wheel and listed in the jury book by name, residence, occupation and borough or township.

9. The jury book is a bound volume into which entries are made at the selection of the jury panel each year and whose first entry was for the jurors for the year of 1962. The book is volume 6 of the jury books of Mercer County.

10. At the conclusion of the entry of the 1,250th name, Donald Hamilton, Julia Welch and President Judge John Q. Stranahan appeared before James Griffin, Prothonotary of Mercer County, and swore that they met on December 1st and 2nd in the Mercer County Courthouse, being the days set apart for so filling the jury wheel, and after being duly sworn did place in the wheel the names of the jurors which appeared in the book.

11. That Richard H. Miller, the Democratic County Chairman of Mercer County, as a result of a study of the potential qualified electors, discovered that there are between 15,000 and 18,000 persons over the age of 21 who are not upon the election records of Mercer County and could potentially become registered electors.

12. That a further study was made of the additional 109 names previously mentioned in finding no. 5 above and that 20 of that number were active politically in the sense that they participated in either Republican or Democratic party activities, were political officeholders or officers of their respective political parties.

13. John B. Cutler, Court Administrator, and former County Superintendent of Schools, testified that school census are conducted every three years but that only persons who are 17 years and under are

required by law to be recorded and that there was no accurate school census of the number of adults in each family in any particular school district who could be regarded as eligible to register or to vote from which a jury list could be composed.

14. That Donald Hamilton is presently the President of the Pennsylvania Association of Jury Commissioners and has attended conventions regularly since 1966 when he first took office. All counties are eligible to have representatives in this association with the exception of Allegheny, Delaware and Philadelphia, leaving class no. 3 to class no. 8 counties as eligible members. That to his knowledge from discussion with jury commissioners from other counties, no jury commissioners attempt to interview the prospective jurors or send out questionnaires to them prior to their being listed for jury duty.

15. It was stipulated by and between the parties that the jury commissioners did not, at anytime, nor did the Sheriff, have a seal or attempt to actually seal the jury wheel.

16. The jury wheel has upon it an individual lock, the key to which is kept by the Sheriff of Mercer County; that this wheel is contained within a box, which is likewise locked with an individual lock, which is also kept in the custody of the Sheriff of Mercer County; that the jury wheel and its outer box are kept in a cabinet which is locked; that there are but two keys to the lock to the outer cabinet, one of which is kept by Mr. Hamilton and the second by Mrs. Welch.

17. That the jury wheel is opened only for the purpose of inserting the names of the jurors at the time of the filling of the wheel and when names are withdrawn at the time of the making of lists as ordered by the court for various terms of criminal and civil court and for grand jury.

18. That the jury wheel is opened and remains open only in the presence of the jury commissioners.

19. That there is no evidence that the jury wheel in this case has been tampered with, that the list of names has been changed, or that the persons listed for grand jury service at the forthcoming meeting of that body scheduled for Monday, August 2, 1971, are not regularly selected jurors.

20. That, in addition to the jury list previously referred to in finding of fact no. 3 which was posted on the bulletin board of the prothonotary, Commissioner Hamilton retains one of those copies.

21. That a person becomes a registered elector by making an application under oath or affirmation with the Election Bureau of Mercer County, that this application requires certain basic information as to identification, but in addition whether the applicant is naturalized and, if so, the derivation thereof, whether assistance is required in voting as a result of a physical disability or illiteracy and if physical in nature, the type of physical disability, the social security number, occupation, the date the residency began in the election district and any former registration under any other surname. All of the above information is available to the jury commissioners at the time of the selection of the names for the jury wheel.

22. That the Election Bureau is not permitted by law and does not require the applicant to vote to undergo any literacy test nor to answer any specific questions to test mental competency or prove qualifications to vote.

23. That the Election Bureau does not conduct any examination to determine whether the applicant is sober, judicious or intelligent.

24. That the Election Bureau does not conduct any examination to determine whether the physical or

mental ability of the elector has changed since the time of his registration.

25. That every December the Election Bureau "purges" the list of electors to determine those who have not reregistered or voted within the last two years.

26. That the number of registered electors substantially decreases on off presidential election years and conversely increases upon presidential election years.

27. That of the 109 additional electors added by the jury commissioners and the President Judge, but one is on the present grand jury list.

28. Defendant has been charged with the offense popularly known as "macing" by soliciting political contributions from employes of the State Department of Transportation for the Democratic Party in Mercer County.

The burden is upon the complaining party to establish the facts to support the challenge: Commonwealth v. Lopinson, 427 Pa. 284, 293, 234 A. 2d 552 (1967), 392 U.S. 647, 20 L. Ed. 2d 1344, 88 S. Ct. 2277. There is a heavy burden upon the petitioner to show that a public official did not properly perform: Commonwealth v. McSorley, 189 Pa. Superior Ct. 223, 150 A. 2d 570 (1959). A court cannot tell the jury commissioners how to discharge their statutory duties in selecting grand jurors and there is a presumption that they perform their public duty in a lawful manner: United States v. McClure, 4 Fed. Supp. 668 (1933). If the act has been substantially complied with without a question of fraud or concealment, it is proper to deny a motion to quash the array of the grand jury: Klemmer v. Mount Penn Gravity R.R. Co., 163 Pa. 521, 30 Atl. 274 (1894); Commonwealth v. Valsalka, 181 Pa. 17, 37 Atlantic 405 (1897). Effective June 1, 1967, Pennsylvania Rule of Criminal

Procedure 203 limited challenges to the array ". . . only on the ground that the grand jury was not selected, drawn or summoned *substantially* in accordance with law." (Italics supplied) Using these rules as a guide issues presented by the petitioner are considered.

I. *Has there been a failure to select the jury panel for the year of 1970 from the whole qualified electors of sober, intelligent and judicious persons?*

By the Act of April 10, 1867, P. L. 62, sec. 2, 17 P. S. §942, it is required that the jury commissioners[1] must select at least 30 days before the first term of Court of Common Pleas in every year alternately from the whole qualified electors of the county such number of persons as designated by order of court to serve as jurors. These persons are to be "sober, intelligent and judicious persons."

The petitioner's contention is that by selecting only persons from the voting list the jury commissioners have not only abrogated their responsibility of selecting sober, intelligent and judicious persons, but have systematically excluded some 15,000 to 18,000 persons who have failed to register to vote, but are qualified. In considering the facts as stated by the petitioner, it is noted that 109 of the total persons selected for jury duty for the year of 1971 were not selected by taking every fiftieth person from the voting list, nor is there any evidence that the 109 were or were not registered to vote. It appeared rather that the meager testimony on the matter being given solely by Commissioner Hamilton was that he selected persons that he had knowledge of who had approached him and had requested to be placed on the jury list.

[1] Interestingly, the jury commissioners must likewise be "sober, intelligent and judicious persons": Act of April 10, 1867, P. L. 62, sec. 1, 17 PS §941.

The United States Supreme Court has recently spoken upon the requirements to constitutionally protect persons from an improper method of selection of jurors. So, in Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966), a requirement that a prospective voter must first pay a poll tax and thereby be eligible for jury duty was held to be unconstitutional for jury service can have no relation to wealth or the ability to pay taxes. The Supreme Court, however, recognized that the ability to read and write has some relation to standards designed to protect intelligent uses of ballots. Therefore, it is not surprising that in Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S. Ct. 518, 24 L. Ed. 2d 549 (1970), an Alabama statute which permitted the jury commissioners to select persons only who are generally reputed to be honest and intelligent and esteemed in their community for integrity, good character and sound judgment, was not invalid, even though the system as so designed with all white jury commissioners could systematically exclude black persons. If black persons were, in fact, systematically excluded, relief may well be afforded, but merely because the system allows for such exclusion does not, in itself, mean that the system is unconstitutional.

A consideration of the Pennsylvania jury system by county demonstrates the lack of uniformity by our statutes in the selection of juries. By statute, Philadelphia County requires that "all of the registered electors" make up the body from which jurors are to be selected. This is exactly what has been done in Mercer County by taking every fiftieth registered elector. Further, in Philadelphia the jury commissioners are selected by the judges of the Court of Common Pleas, the salaries and expenses and necessary clerical assis-

tance are determined by the judges. They are then directed to make inquiry by questionnaire, personal interview, or otherwise, touching the qualifications for jury service of each of the persons selected. To assist them in doing so, they are given the power of subpoena and the right to examine persons under oath in relation to their qualifications for jury service. Finally, if a false answer to a pertinent question is given by a prospective juror, it shall be regarded as perjury, punished by not more than one year in the county prison or a fine of not more than $100. This is the only county which has the statutory authority to provide adequate moneys for individual examination of prospective jurors and the right to subpoena persons for examination and punish them if they fail to file a truthful answer. Act of May 10, 1949, P. L. 1066, sec. 2, 17 PS §1252. That the statutes of Pennsylvania are not uniform depending on the class of county involved was attacked in Commonwealth v. Aljoe, 420 Pa. 198, 205, 216 A. 2d 50, 16 A. L. R. 3rd 1126 (1966). The court concluded that the disparity between counties did not amount to a deprivation of the equal protection of the laws afforded by the fourteenth amendment of the Constitution of the United States.

In Allegheny County, the jury commissioners are to select juries from the names of persons assessed for the purpose of taxation: Act of August 10, 1951, P. L. 1219, sec. 1, 17 PS §1277. This statute was under attack in Commonwealth v. Leonard, 315 F. Supp. 215 (1970). There, it was directed to be returned to a State court because there was no denial of equal protection of the laws under the fourteenth amendment.[2]

---

[2] It is noted in that opinion that there were then three cases in Allegheny County contending that the statute was unconstitutional in that it excluded black persons from grand and petit juries.

The very issue raised by the petitioner that the use of voter registration list is a denial of the right of the petitioner to have a selection from all of the potential voters of the county was denied in Grimes v. United States, 391 F. 2d 709 (1968). There, the United States Fifth Circuit Court of Appeals for the Fifth Circuit wrote, page 709:

"Appellants contend, however, that the use of voter registration lists as the sole source of names for jury duty is illegal. There was no showing that the use of those lists resulted in the exclusion of a 'cognizable group or class of qualified citizens.' . . . A group of persons who have failed to register to vote has never been considered to constitute a 'cognizable group.' "

Counties of third class are limited in the selection of jurors to persons who are residents of the county and able to understand the English language. Attorneys at law and physicians in active practice are not to be listed for jury service. Also, persons under indictment, whether for felonies or misdemeanors, or persons who have been convicted of felonies are ineligible for jury service: Act of April 16, 1925, P. L. 244, sec. 2, 17 PS §1322; Act of May 17, 1939, P. L . 157, sec. 2, 17 PS §1333.

Therefore, it can be seen that the system need not be perfect as long as it reasonably assures litigants of jurors from a cross-section of the county. The failure to register is not limited to any particular economic strata, ethnic background or social position. The opportunity to register is open to all who meet the minimum requirements of age. It is contended by the petitioner that the jury commissioners and President Judge abandoned their obligation of alternate selection. Although the list was previously decided upon from every fiftieth person, each of the three persons participating in order called off every third name to be

placed in the jury wheel. This was an affirmation that each agreed with the system that was being used and of the individual name he was giving. The jury commissioners spent between 10 and 14 days in the selection of names for placement in the wheel of 1,250 names. They, therefore, selected approximately 100 names per day. They checked the names with the voter registration office before selection. This does not indicate a mere recital of typewritten names. The information required for registration in itself may well meet the requirements of "sober, intelligent and judicious," for one learns from the registration card whether the registrant is illiterate, whether he needs assistance in voting, whether he has a physical disability which would require assistance in voting and his Social Security number. This may well indicate him to be a wage earner. The terms "sober, intelligent and judicious" have never been defined by case law in Pennsylvania. Although many definitions are found in the American Heritage Dictionary of the English Language (1970) for the three words, the common thread of definition for all three words is self-control, reasonable, rational, to choose between or proceed in sound judgment.

Not a scintilla of evidence was produced that any of those selected for the 1,250 prospective jurors for the year of 1971 or the 30 jurors called for service at the forthcoming grand jury were not sober, intelligent and judicious persons.

As argued by the petitioner himself through his counsel, the act under which the jury commissioners must operate was passed by the legislature in 1867. The size of Mercer County has substantially grown since that time. The day has long passed where jury commissioners in a county of 127,000 persons with over 57,000 registered voters can possibly know by

personal knowledge whether the 57,000 registered voters are, in fact, sober, intelligent and judicious without an adequate staff or resources to conduct an individual examination or the power to subpoena persons to come and answer questions truthfully. This court and the jury commissioners arrived at a solution which was the most fair and practical. Arguments were made that the jury commissioners could have composed lists from many other sources, such as telephone books, street indexes, tax rolls, school lists, etc. The voter registration list is the only reliable one. It was the largest most reliable source that could be used for the selection of jurors. So finding, there is no basis to quash the jury upon this contention.

II. *Must the array of the grand jury be quashed because 20 of the additional 109 jurors comprising the total jury list of 1,250 have some political connection?*

The selection of jury commissioners contemplates one jury commissioner from each of the two dominant political parties: Grove v. Toninecz, 189 Pa. Superior Ct. 32, 149 A. 2d 547 (1959). Further, even though the jury commissioners secure their names by writing to committeemen throughout their county requesting the names of qualified electors and using those names clearly selected on a political basis, it is not grounds to quash the array. The Superior Court in that case held that the requirement that the jurors shall be selected from the "whole qualified electors" of the county is directory only and not mandatory.

The testimony disclosed that only one of the 109 persons who were not selected by taking each fiftieth registered voter is listed upon the forthcoming grand jury; that one person was not included in the 20 alleged to have political affiliations. Therefore, it is difficult to conceive how the allegation of political affiliations in any way affects the opportunity of this defen-

dant to receive a fair and impartial consideration by this grand jury.

III. *Does the failure to seal the jury wheel require that the array of the jury for 1970 be quashed in its entirety?*

The Act of April 14, 1834, P. L. 333, sec. 90, 17 PS §976, requires that as soon as the selection of the jurors and the depositing of their names in the wheel is completed, it must be locked and secured by sealing wax. In 1834, the statute dealt with the sheirff and the county commissioners. However, by the Act of April 10, 1867, P. L. 62, sec. 4, 17 PS §946, jury commissioners were substituted for the county commissioners, but the section of the statute dealing with the sealing and breaking of the seal was specifically retained. There are appellate court decisions which say that the failure to properly seal the jury wheel is grounds for quashing the entire jury panel even though prejudice not be shown: Kittanning Insurance Company v. Adams, 110 Pa. 553, Atl. 433 (1885). In Brown v. Commonwealth, 73 Pa. 321 (1873), at page 330: "Strict attention should be paid to the execution of the jury law, so as to avoid these technical objections, . . ." Even being technical, however, a new trial was granted. In Rolland v. Commonwealth, 82 Pa. 306 (1876), it was held that the sheriff and jury commissioners cannot use the same seal. A new trial was granted, but not upon that point. In Curley v. Commonwealth, 84 Pa. 151 (1877), a conviction was sustained, but it was noted that each jury commissioner and the sheriff should have their own seal and it should be alone in that person's custody. It has also been held that the jury commissioners and the sheriff may adopt any device reasonably to reveal any attempt to tamper with or open the jury wheel (Commonwealth v. Bedell, 26 Pitts. 85 (1879)), but they

are not required to have an official seal, Commonwealth v. Hoffstot, 58 Pitts. 379, 386, 4 Lehigh 141, 144 (1910). No appellate court decision after Kittanning Insurance Company v. Adams, supra, in 1885, has been found where the general jury panel was required to be quashed for failure to have a seal.

Initially, it may be questioned whether the Supreme Court of Pennsylvania intended to permit the lack of seal to be raised at all, for by Pennsylvania Rule of Criminal Procedure 203 the test is whether the jurors were drawn, selected and summoned substantially in accordance with law. In addition, there are many Pennsylvania cases which hold that departures from strict compliance with the statute, which in no way interferes with the rights of the defendant, are not grounds to quash the array: Commonwealth v. O'Brien, 8 D. & C. 2d 241 (1956). In Commonwealth v. Baker, 185 Pa. Superior Ct. 515, 138 A. 2d 177 (1958), arising in this county, there was a failure by the jury commissioners to certify the list as posted with the prothonotary and, in addition, to take the required oath before the filling of the wheel. As to the latter, it was held not to be error in the absence of ill will, malice or prejudice. As to the former, it likewise was held not to be sufficient to upset the jury unless the rights of the accused had been deprived or injured. Commonwealth v. Hitman, 85 York 25 (1968), likewise held that a failure of the jury commissioners to take the oath is not grounds to quash the indictment in the absence of a showing of prejudice. If there is a disregard of the material provisions which make up the essential elements of the jury system, it may be grounds: Commonwealth v. Borso, 59 D. & C. 587, 31 Northampton 37 (1947). Merely because certain names were furnished by a party committee was held to be insufficient to quash the array:

Commonwealth v. Mullin, 65 Pa. Superior Ct. 365 (1916). If the jury commissioners put in a few names more than designated by the court order, it is not sufficient to quash: Rizzolo v. Commonwealth, 126 Pa. 54, 17 Atl. 520 (1889). If there is no proof that a jury wheel has been tampered with, it is insufficient to set aside a verdict; Commonwealth v. Eagan, 190 Pa. 10, 42 Atl. 374, affirming 8 Dist. 484 (1899). A failure to mark the list as filed of record in the prothonotary's office where there was no intimation that the list was ever tampered with or concealed, is insufficient to quash the array: Klemmer v. Railroad, supra. Even though the oath was not filed in the prothonotary's office, it is insufficient for allowing the motions: Commonwealth v. Valsalka, supra.

The evidence in the case at bar establishes that the list posted in the office of the prothonotary conforms exactly to the names in the wheel; that the names in the wheel are subscribed in pen in a permanent record in book form; that an examination was made of that book and there is no evidence of any tampering or alteration; that if a person would appear claiming to be a duly listed juror, the truth of the allegation could swiftly be determined by going to the prothonotary's office and examining the master list or by looking at the jury book. The integrity of the system as administered by the jury commissioners and the president judge of this court has been more than adequately preserved. The petitioner has utterly failed to prove that he was deprived or injured by any of the actions of the jury commissioners, the sheriff or the president judge. There was no evidence of ill will, malice or prejudice exercised against him. The departures from strict compliance with the statute by the jury commissioners in no way infringed upon his rights. The challenge to the array is dismissed.

106

## ORDER

And now, this July 30, 1971, the challenge to the array is dismissed. The rule to show cause why the entire grand jury panel selected for the September term of 1971 should not be dismissed is discharged and the district attorney of this county is hereby authorized to present the action against John Francis Webster, the petitioner, to the forthcoming grand jury for the September term of 1971.